LADD v MOTOR CITY PLASTICS CO

Docket No. 303018. Submitted September 4, 2013, at Detroit. Decided October 31, 2013, at 9:00 a.m.

David C. Ladd brought an action in the Monroe Circuit Court to recover a judgment of $113,200 he had been awarded in an employment action against Motor City Plastics Company. In an effort to recover on the judgment, Ladd had served a writ of garnishment on United Bank and Trust, where Motor City had $41,000 in deposit accounts, but the bank responded in a garnishee disclosure that Motor City owed it $1.5 million in defaulted loans and that the bank therefore had a right of setoff. Believing that it was not required to exercise this right in order to preserve it, the bank had opted not to withhold or remove funds from Motor City's accounts to avoid forcing Motor City out of business, thereby destroying the bank's collateral. By the time plaintiff served a subpoena on the bank, Motor City's loans had been discounted and sold to a third party. After a trial conducted pursuant to MCR 3.101(M), the court, Joseph A. Costello, Jr., J., denied plaintiff's motion for amount due on the judgment, ruling that the bank was not required to withhold funds from Motor City's accounts in order to claim its setoff rights. The court also denied plaintiff's motion for sanctions after concluding that the bank had not intentionally lied on its garnishee disclosure form. Plaintiff appealed, and the bank cross-appealed the court's denial of its request for attorney fees.

The Court of Appeals *held*:

1. The bank's motion to dismiss plaintiff's appeal under MCR 7.216(A)(10) was denied because, although plaintiff had violated MCR 7.210(B)(1)(a) by ordering only a partial transcript of the trial court's decision from the bench, this defect was minor and promptly cured.

2. The trial court did not abuse its discretion by declining to hold the bank in contempt. Although the preprinted garnishee disclosure form the bank submitted did not precisely fit the circumstances of this case, the form was not willfully misleading in light of the bank's added statement regarding its claimed setoff rights.

3. The trial court correctly ruled that the bank was not required to actually exercise its setoff rights in order to deny the release of funds under the writ of garnishment. MCR 3.101(H)(1)(a) requires a garnishee holding money or assets of the debtor to file a disclosure indicating any setoff that the garnishee "would have" against the debtor, which connotes the idea that the right to a setoff is one that the garnishee would have against the defendant if it chose to exercise that right. Making a claim to one's setoff rights is not the same as exercising the right to set off. Therefore, the bank properly claimed its right to a setoff when it received the garnishment, and it was not required to exercise this right before denying the release of funds to plaintiff.

4. The bank did not waive its right to a setoff or its security interest by allowing Motor City to continue using its bank accounts after plaintiff served the garnishment writ. Under MCL 440.9104, the bank had a perfected security interest in all of Motor City's deposit accounts, and the bank had control of the accounts even if Motor City retained the right to direct the disposition of funds from them.

5. The trial court did not clearly err by denying the bank's motion for costs and attorney fees under MCR 2.625(A)(2) because the action involved an unsettled point of law and was not frivolous, and the trial court did not abuse its discretion by denying the motion under MCR 2.625(E)(2).

Affirmed.

Judge JANSEN, concurring in all but parts III(C) and (D), would have held that MCR 3.101(H)(1)(a) does not allow a garnishee to claim a right of setoff without actually exercising the right in a seasonable manner. She would have reversed the trial court's ruling to the contrary and remanded for entry of judgment in favor of plaintiff in the amount of Motor City's funds on deposit with the bank when the garnishment writ was served, up to the amount of the underlying judgment plus statutory interest.

GARNISHMENT — CLAIMS TO SETOFF RIGHTS.

A garnishee is not required to actually exercise its setoff rights in order to deny the release of funds under a writ of garnishment; MCR 3.101(H)(1)(a) requires only that a garnishee holding money or assets of the debtor file a disclosure setting forth any setoff that the garnishee would have against the debtor if the garnishee chose to exercise its setoff rights.

*Lyden, Liebenthal & Chappell, Ltd.* (by *Erik G. Chappell* and *Julie A. Douglas*), for David C. Ladd.

*Robison, Curphey & O'Connell, LLC* (by *Jean Ann S. Sieler*), for United Bank and Trust.

Before: MURPHY, C.J., and JANSEN and MURRAY, JJ.

MURRAY, J. Plaintiff David C. Ladd appeals by right the circuit court's order (1) denying his motion for amount due on judgment and contempt sanctions, (2) determining that garnishee United Bank & Trust ("UBT" or "the bank") was not required to actually exercise its claimed right of setoff against the deposit accounts of defendant Motor City Plastics Company ("Motor City"), (3) determining that UBT followed proper procedures and was not in contempt, and (4) denying UBT's request for attorney fees. UBT cross-appeals the same order. We affirm.

### I. FACTUAL BACKGROUND

Following trial in the underlying employment litigation, plaintiff received a judgment against Motor City in the amount of $113,200, plus statutory interest. On January 22, 2010, believing that Motor City had funds on deposit at UBT, plaintiff served a writ of nonperiodic garnishment on UBT. The writ of garnishment stated that the total amount due on the unsatisfied judgment against Motor City was $119,555.23.

On January 29, 2010, UBT submitted a garnishee disclosure stating that it was "not indebted to [Motor City] for any amount" and did not "possess or control [Motor City's] property, money, etc." Instead, UBT asserted that it was claiming a right of "setoff" against any money that Motor City had on deposit at the bank.

UBT attached a short supplement to its garnishee disclosure, explaining that Motor City was in default with respect to certain loans that were payable to UBT and that Motor City was "indebted to UBT under [the] loan documents in an amount in excess of the value of [Motor City's] accounts with UBT."

At a debtor's exam, Motor City's president, Keith Ruby, testified that UBT never exercised its claimed right of setoff against Motor City's accounts. Ruby confirmed that Motor City continued to use its accounts and withdraw funds, even after the writ of garnishment was served on UBT.

In an affidavit, UBT's executive vice president, John Wanke, averred that "[o]n January 29, 2010, [Motor City] was indebted to UBT under multiple loan documents in an amount in excess of the value of [Motor City's] accounts with UBT" and that "[p]ursuant to certain of the above referenced loan documents, UBT had rights of setoff . . . ." Citing UBT's "confidentiality policies," Wanke refused to confirm the specific amount that Motor City had on deposit with the bank.

At his deposition, Wanke testified that Motor City had defaulted on its loan obligations to UBT as of July 2009. A letter from UBT to Motor City, dated July 16, 2009, indicated that Motor City was in default on three different loans, totaling more than $1.5 million.[1] Wanke confirmed that Motor City had a business checking account with UBT, as well as a smaller "sweep account."

When the writ of garnishment was served on January 23, 2010, Wanke instructed bank employee Annette Kurowicki to delay releasing any funds from Motor City's deposit accounts until he could first

---

[1] UBT eventually discounted and sold Motor City's outstanding loans to a third party in the spring of 2010.

obtain advice from UBT's legal counsel.[2] Wanke confirmed that Motor City had money on deposit in its accounts when the writ of garnishment was served. Banking records showed that a payment of $107,000 was deposited into Motor City's business checking account on January 29, 2010, only one week after the writ of garnishment was served.

After several additional discovery requests, Wanke submitted a second affidavit in which he confirmed that on January 23, 2010, the balance in Motor City's business checking account was $36,045.50, and the balance in Motor City's sweep account was $5,255.87. Wanke explained that UBT had initially intended to exercise its right of setoff, but "[t]he Bank was advised by counsel that it had a superior right to setoff and . . . was not required to withhold funds under the court rules; thus, the funds were not physically removed from the account."

On October 6, 2010, plaintiff filed a motion for amount due on the judgment and for contempt sanctions. Plaintiff pointed out that UBT had never exercised its claimed right of setoff and argued that UBT had knowingly provided false answers on its garnishee disclosure. Plaintiff contended that UBT was liable to it in the full amount due on the underlying judgment against Motor City.[3] Plaintiff argued that, given the allegedly misleading statements in UBT's garnishee

---

[2] Kurowicki averred in her affidavit that she had placed an informal hold on Motor City's accounts upon receiving the writ of garnishment on January 23, 2010. However, this informal hold was lifted on Monday, January 25, 2010, at about 4:00 p.m.

[3] Among other authorities, plaintiff relied on MCL 600.4051, which provides: "Any person summoned as a garnishee or any officer, agent, or other person who appears and answers for a corporation summoned as a garnishee, who knowingly and wilfully answers falsely upon his disclosure or examination on oath is liable to the plaintiff in garnishment, or to

disclosure, the circuit court should hold UBT in contempt and award sanctions, including reasonable attorney fees, pursuant to MCR 3.101(S).

In response, UBT argued that plaintiff had failed to follow the proper steps under MCR 3.101(L) and (M). UBT maintained that it had properly filed its garnishee disclosure in accordance with MCR 3.101(H) and that it had not misstated any facts on the disclosure form. UBT alleged that it had properly claimed its right of setoff in accordance with MCR 3.101(H)(1)(a). Citing an unpublished opinion of this Court, UBT asserted that "[i]f the garnishee claims a right to setoff which exceeds the amount of any debt owing to the defendant, then the garnishee is not indebted to the defendant." UBT also asserted that Michigan law did not require it to actually remove or withhold funds from Motor City's deposit accounts in order to claim its setoff rights. UBT sought judgment in its favor, arguing that there was no genuine issue of material fact, that no law required it to actually exercise the setoff, that it had properly complied with the requirements of MCR 3.101, and that the statements on its garnishee disclosure had not been designed to mislead plaintiff.

Trial was held on December 14 and 15, 2010.[4] Wanke testified that Kurowicki received the writ of garnishment on Saturday, January 23, 2010. Wanke's initial inclination was to immediately exercise UBT's right of setoff. However, Wanke decided to first seek the opinion of UBT's legal counsel. Wanke confirmed that no money was ever physically removed from Motor City's deposit

his executors or administrators, to pay out of his own goods and estate the full amount due on the judgment recovered with interest, to be recovered in a civil action."

[4] The circuit court characterized the proceedings as an "evidentiary hearing." However, it is clear that the hearing actually constituted a bench trial under MCR 3.101(M).

accounts or applied to Motor City's outstanding loan debt. In fact, Motor City continued to have unrestricted access to its deposit accounts at UBT.[5] Wanke was concerned that, by actually removing funds from Motor City's accounts and applying those funds toward the loan debt, UBT might inadvertently destroy its collateral by forcing Motor City out of business. Wanke believed that UBT could best preserve its collateral by declining to exercise the setoff.

The loan documents originally executed by Motor City and UBT specifically authorized UBT to remove funds from Motor City's deposit accounts to offset any sums owing on Motor City's loans. The total amount in Motor City's deposit accounts was about $41,000 on the morning of Saturday, January 23, 2010. On that same day, the total amount owed to UBT by Motor City was in excess of $1.5 million. UBT did not receive any objections or discovery requests from plaintiff for several months after the garnishee disclosure was submitted. By the time UBT finally received a subpoena from plaintiff on May 4, 2010, Motor City's loans had been discounted and sold to a third party.

Following the presentation of testimony, counsel for UBT orally moved for a directed verdict. Counsel argued that the bank's right of setoff was superior to any right that plaintiff had as a garnishor. Relying on MCR 3.101(H)(1), *Sears, Roebuck & Co v AT&G Co, Inc*, 66 Mich App 359; 239 NW2d 614 (1976), and *Carpenters South California Admin Corp v Mfr Nat'l Bank of Detroit*, 910 F2d 1339 (CA 6, 1990), counsel also argued that "there is no requirement in Michigan that the

---

[5] Ruby testified that Motor City's access to its deposit accounts at UBT did not change after the bank received the writ of garnishment in January 2010. Motor City was never told to stop writing checks or to stop using its accounts.

funds actually be removed and applied against a loan in order to claim your right of setoff and protect your right to control the use of those funds . . . ."

With respect to plaintiff's request for contempt sanctions and attorney fees, UBT argued that it had not knowingly or willfully provided false answers on its garnishee disclosure. Counsel pointed out that plaintiff had not objected to the garnishee disclosure or served additional discovery requests within 14 days as required by MCR 3.101(L)(1). Counsel contended that plaintiff had severely prejudiced UBT by waiting more than three months, until after Motor City's outstanding loans had already been discounted and sold, to object to the garnishee disclosure and subpoena additional bank records.

Plaintiff's attorney responded by arguing that "there is no case, rule, or statute that says that a bank simply has to claim a right of setoff and then can do whatever [it] want[s] to do with the funds that are on . . . deposit." Plaintiff's counsel noted that, according to the plain text of MCR 3.101(G)(1), a garnishee's liability is subject to "any setoff permitted by law"—not any *claimed* setoff permitted by law. Based on this language, plaintiff's counsel argued that a garnishee must *actually exercise* a right of setoff in order to claim it on a garnishee disclosure.

Plaintiff's counsel also argued that UBT's garnishee disclosure was "patently false" because it stated that the bank did not "possess or control" any of Motor City's property, money, or assets. The evidence showed that there was approximately $41,000 on deposit in Motor City's accounts at the time the writ of garnishment was served. Plaintiff contended that UBT had knowingly provided misleading answers on its gar-

nishee disclosure and that the court should find UBT in contempt under MCR 3.101(S)(2).

The circuit court delivered its ruling from the bench on December 22, 2010. The court first concluded that UBT had not intentionally lied on its garnishee disclosure. The court observed that the language of the preprinted garnishee disclosure form supplied by the State Court Administrative Office, SCAO Form MC14, was misleading. Thus, the court understood why plaintiff had been confused. According to the court, UBT should have struck the inapplicable language from the preprinted form or prepared its own garnishee disclosure without using the preprinted form. However, the court did not believe that UBT had intended to mislead plaintiff. The court announced that it would not hold UBT in contempt. However, because the form was misleading, the court stated that it would not order plaintiff to pay costs or attorney fees to UBT either.

The circuit court went on to rule that UBT was not required to actually remove funds from Motor City's deposit accounts and apply them toward Motor City's outstanding loan debt in order to claim a setoff:

> [W]e know that initially [UBT] did not exercise the setoff other than to say [that it had] the right to one and the [c]ourt did not believe that that was . . . the most appropriate thing to do. . . . [I]f someone is going to claim a setoff then they should proceed with it.
>
> As we went through the . . . hearing and listened to oral arguments, certainly I . . . rethought some of my initial thoughts on this case. . . . I can understand why a secured creditor might want to hold off on that as opposed to trying to compel . . . the debtor into some type of bankruptcy or to close down their operations, which would reduce the opportunity for the bank to collect on monies owed to it . . . .

So, I can't say that the bank was commercially unrea-
sonable in doing what [it] did[,] nor can I find that there
was any type of collusion between [UBT] and Motor City
Plastics to deny [plaintiff] monies that are certainly due
and owed to him.

* * *

I can't find under any of the case law cited by either side
that . . . the bank had to go through and actually exercise
that setoff in order to deny the release of . . . monies to a
garnishor, that being the plaintiff in this . . . case.

* * *

I cannot find that [UBT] violated the procedure to the
extent that I can compel [UBT] to now be responsible for
the payment that should've come from Motor City Plastics
Company to the benefit of [plaintiff].

On February 18, 2011, the circuit court entered an
order in which it (1) denied plaintiff's motion for
amount due on the judgment and for contempt sanc-
tions, (2) determined that UBT had "followed proper
procedures" and "not act[ed] in any way to defy legal
process," (3) concluded that UBT had not been required
to withhold funds from Motor City's deposit accounts in
order to claim its right of setoff, and (4) denied UBT's
request for attorney fees.

## II. STANDARD OF REVIEW

The evidentiary hearing conducted by the circuit
court constituted a bench trial under MCR 3.101(M).
The circuit court's findings of fact, if any, following a
bench trial are reviewed for clear error, while its con-
clusions of law are reviewed de novo. *Ligon v Detroit*,
276 Mich App 120, 124; 739 NW2d 900 (2007).

### III. ANALYSIS

#### A. FAILURE TO ORDER A COMPLETE TRANSCRIPT

UBT argues that this appeal should be dismissed because plaintiff failed to order a complete transcript of the circuit court's ruling from the bench and, therefore, this Court is unable to properly review the circuit court's decision.

It is true that plaintiff originally ordered only a partial transcript of the circuit court's oral decision,[6] which technically constituted a violation of MCR 7.210(B)(1)(a). However, a complete transcript of the circuit court's oral decision was subsequently ordered and was filed with the circuit court on November 21, 2011, more than a month before the circuit court record was received by this Court. Although this Court "may ... dismiss an appeal or an original proceeding for ... failure of the appellant ... to pursue the case in conformity with the rules," MCR 7.216(A)(10), plaintiff's violation of MCR 7.210(B)(1)(a) was minor and was subsequently cured. Thus, in the exercise of our discretion, we decline to dismiss the appeal under MCR 7.216(A)(10). See *In re Forfeiture of Bail Bond*, 276 Mich App 482, 492; 740 NW2d 734 (2007).

#### B. FAILURE TO FOLLOW PROPER PROCEDURES UNDER MCR 3.101(G)(1) AND (H)(1)

Plaintiff contends that UBT's garnishee disclosure was willfully misleading, that UBT failed to follow proper procedures under MCR 3.101(G)(1) and (H)(1) when it refused to release funds from Motor City's deposit accounts pursuant to the writ of garnishment,

---

[6] The portion of the transcript that was not originally ordered contained only the court's recitation of the facts of the case, and not its final ruling.

and that the circuit court should have held UBT in contempt of court. Plaintiff also argues that the circuit court erred by determining that UBT had "followed proper procedures" and did "not act in any way to defy legal process." UBT, of course, disagrees with each of these assertions and argues that the circuit court properly declined to hold it in contempt.

We review the circuit court's decision whether to hold a party in contempt for an abuse of discretion. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). Whether UBT followed proper procedures is a question of law that we review de novo. See *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007); *In re CR*, 250 Mich App 185, 200; 646 NW2d 506 (2002).

"If there is a dispute regarding the garnishee's liability . . . , the issue shall be tried in the same manner as other civil actions." MCR 3.101(M)(1); see also *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 309; 486 NW2d 351 (1992). Following trial, the circuit court concluded that UBT had "followed proper procedures" and had "not act[ed] in any way to defy legal process[.]" The circuit court's decision was factually and legally sound.

UBT submitted its garnishee disclosure on preprinted SCAO Form MC14. Form MC14 is confusing insofar as it does not provide a checkbox or blank where a garnishee can claim a right of setoff. Instead, under the heading "Nonperiodic Garnishments," Form MC14 requires a garnishee to check one of the following three statements:

> a. The garnishee is not indebted to the defendant for any amount and does not possess or control the defendant's property, money, etc. Reason:_____
> _____.

b. The garnishee is indebted to the defendant for nonperiodic payments as follows: _____ _____ . The amount to be withheld is $_____ and does not exceed the amount stated in item 2 of the writ.

c. Withholding is exempt because_____ _____.

UBT checked "a. The garnishee is not indebted to the defendant for any amount and does not possess or control the defendant's property, money, etc.," but went on to explain in the blank space provided that it was claiming a right of setoff against Motor City's deposit accounts. Plaintiff argues that this was misleading because UBT possessed or controlled the funds in Motor City's accounts.

As the circuit court correctly noted, UBT should have struck the inapplicable language from the form or prepared its own garnishee disclosure without using the preprinted form. By doing so, UBT could have acknowledged its possession and control of the funds in Motor City's deposit accounts while at the same time claiming a setoff against those funds in accordance with MCR 3.101(H)(1)(a). In this way, UBT would not have been forced to check one of the three statements on Form MC14, none of which precisely fit the circumstances of this case.

We acknowledge, as did the circuit court, that UBT's use of the preprinted form likely added to the confusion in this case. But it should have been clear to plaintiff upon inspection of the garnishee disclosure that UBT did possess and control the funds in Motor City's deposit accounts. After all, if UBT had not possessed and controlled the funds, the additional language provided by UBT concerning its claimed setoff would have been nonsensical. Moreover, both Wanke and Kurowicki

testified that they filled out the garnishee disclosure form to the best of their abilities and did not intend to mislead plaintiff in any way. We cannot conclude that the circuit court erred by determining that UBT followed proper procedures with respect to its garnishee disclosure. The overwhelming weight of the evidence established that, although UBT's garnishee disclosure might have been confusing, UBT did not intentionally mislead plaintiff, nor did the circuit court abuse its discretion by declining to hold UBT in contempt of court on this basis.

### C. RIGHT OF SETOFF

Plaintiff next argues that UBT was required to actually exercise its right of setoff against Motor City's deposit accounts in order to deny the release of funds pursuant to the writ of garnishment. However, the circuit court correctly ruled that it was sufficient for UBT to merely claim its right of setoff on the garnishee disclosure, given that it was not required to exercise that right or seize the funds.

Whether a garnishee must actually exercise its claimed right of setoff in order to deny the release of funds under a writ of garnishment constitutes a question of law reviewed de novo. See *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). Additionally, resolving this issue requires interpretation of the Michigan Court Rules governing garnishment procedures, which also constitutes a question of law reviewed de novo. *Badeen v PAR, Inc*, 300 Mich App 430, 439; 834 NW2d 85 (2013). "[T]he goal in interpreting [a court rule] is to give effect to the rulemaker's intent as expressed in the court rule's terms, giving the words their plain and ordinary meaning." *Id*.

In Michigan, "[g]arnishment actions are authorized by statute." *Nationsbanc Mortgage Corp of Georgia v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000). "The court may exercise its garnishment power only in accordance with the Michigan Court Rules." *Id.*; see also MCL 600.4011(2). Postjudgment garnishment proceedings are governed by MCR 3.101. *Nationsbanc*, 243 Mich App at 564.

"The general rule . . . is that the bank has a lien on all moneys, notes, and funds of a customer in its possession, for any indebtedness of the customer to the bank which is due and unpaid." *Gibbons v Hecox*, 105 Mich 509, 513; 63 NW 519 (1895); see also *White Truck Sales of Saginaw, Inc v Citizens Commercial & Savings Bank*, 348 Mich 110, 117; 82 NW2d 518 (1957); 3 Michigan Civil Jurisprudence, Banking & Money Affairs, § 109, p 221. This lien is more accurately known as a "setoff" insofar as it relates to a customer's deposit accounts. See 1 Graham, Banking Law, Lien & Setoff, § 11.03, pp 11-9 and 11-10; see also *Westland Park Apartments v Ricco, Inc*, 77 Mich App 101, 105; 258 NW2d 62 (1977) (W. F. HOOD, J., dissenting).[7]

The issue of setoff frequently arises when a depositor's bank account is garnished. The general rule is that "[a] bank may set off against the amount of a deposit that has been garnished the amount of any matured indebtedness due it by the depositor." 6 Am Jur 2d,

---

[7] As explained by one commentator, there is a technical distinction between a bank's lien and a bank's right of setoff: "The banker's lien extends to securities and other valuables in the possession of the bank, title to which is still in the debtor. General deposits become the property of the bank. It cannot properly be said that the bank has a lien on its own funds. Rather, the bank is allowed to set off its debt to the depositor (represented by the balance in the deposit account) against debts owed to it from the same depositor." 1 Graham, Banking Law, Lien & Setoff, § 11.03, pp 11-9 and 11-10.

Attachment & Garnishment, § 373, p 748. A garnishee
bank may exercise its right of setoff against a deposi-
tor's accounts even after the writ of garnishment has
been served. 27 Michigan Law & Practice, Remedies,
§ 104, p 304.

A bank may set off against the funds contained in a
depositor's accounts the amount of a depositor's indebt-
edness to the bank only if the following conditions are
met:

> (1) that the funds used for the setoff were the property
> of the debtor, (2) that such funds were deposited in a
> general account without restriction as to the use therefore
> [sic], (3) that the existing indebtedness was due and owing
> at the time of the setoff, and (4) that there was a mutuality
> of obligation between the debtor . . . and his creditor . . . ,
> as well as between the debt and the funds on deposit.
> [*Hansman v Imlay City State Bank*, 121 Mich App 424, 430;
> 328 NW2d 653 (1982).]

In the context of nonperiodic garnishments, if the
garnishee holds money or assets of the debtor, Michigan
law requires that the garnishee file a disclosure setting
forth, among other things, "any setoff that the gar-
nishee *would* have against the [judgment debtor], ex-
cept for claims for unliquidated damages for wrongs or
injuries." MCR 3.101(H)(1)(a) (emphasis added); see
also MCR 3.101(G)(1) (providing that a garnishee's
liability is "[s]ubject to . . . any setoff permitted by law
or these rules"). Although there is no Michigan caselaw
that specifically addresses whether a garnishee bank
must actually remove or withhold money from its
depositor's accounts in order to claim its right of setoff,
the language of the court rules themselves provides the
answer to this question.

Pursuant to the language of MCR 3.101(H)(1)(a), UBT,
the garnishee, was required to claim any setoff it "would

have" against Motor City. The phrase "would have" connotes the idea that the right of setoff is one that the garnishee would have against the defendant if it chose to exercise that right. In other words, the court rule requires that, in response to a writ of garnishment, the garnishee inform the garnishor of any claim to a right of setoff that it would have if it exercised that right.

This reading of the court rule is not only consistent with its ordinary meaning, but is also consistent with the meaning of a "right." In the context of a debtor situation like we have here, a right is defined as "[t]he interest, claim, or ownership that one has in tangible or intangible property[.]" Black's Law Dictionary (7th ed, 1999), def 5. Hence, in claiming a *right* to a setoff, one is claiming an interest or ownership in tangible or intangible property. Making a *claim* to such an interest or right, however, is not the same as *exercising the right* to the setoff. See generally *Attorney General v Chisholm*, 245 Mich 285, 289; 222 NW 761 (1929) (stating "It is apparent that it must be but an insignificant part of the fund of $700,000, which defendants are claiming the right to administer by virtue of the act of 1915, which they insist is still in force, and the exercise of which right is here involved and should be determined," thus making a distinction between the claiming of the right at issue and the exercising of that right). Here, UBT claimed its right to a setoff when it received the garnishment. It properly informed plaintiff that it had the right to a setoff against all of Motor City's UBT accounts, as Motor City owed UBT more than what was contained in those accounts. Once this was declared, plaintiff then had the opportunity to challenge the declaration through discovery and, ultimately, a trial. See MCR 3.101(L) and (M).[8]

---

[8] From what has been presented to us, it appears that plaintiff did not timely challenge UBT's disclosure. See MCR 3.101(L)(1). Even though

UBT's declaration that it had the right to a setoff without exercising the right does no injustice to plaintiff, for there is no question but that UBT had as to plaintiff a superior right to any funds in the Motor City accounts up to the amount owed to UBT. *Blow v Blow*, 134 Mich App 408, 411-412; 350 NW2d 890 (1984). Because the evidence suggests that there was never an amount in the accounts at any point in these proceedings that came close to what was owed UBT, plaintiff would never have been entitled to any of the funds claimed by UBT as a setoff. *Buckenhizer v Times Publishing Co*, 267 Mich 393, 395; 255 NW 213 (1934) ("[P]laintiff cannot recover a judgment in any amount because defendant has a set-off of a greater amount[.]").[9]

The partial dissent asserts that allowing a garnishee to merely claim a right of setoff without exercising it "facilitates collusion between the garnishee and judgment debtor" and claims that this is "exactly what happened in this case." To the contrary, the designated fact-finder in this case—the trial court—found *no* evidence of collusion or ulterior motive on the part of UBT and Motor City. We simply cannot ignore that finding, particularly when no evidence suggests that this finding was clearly erroneous. And, we are confident that by following the garnishment court rules that any challenge that alleges collusion can be resolved by the trial court through the trial permitted under MCR 3.101(L) and (M).

UBT contested the timeliness of plaintiff's challenge to the disclosure in the circuit court, it has not pressed the issue in this Court.

[9] We note that had there been at the time the garnishment was served, or during the course of the discovery proceedings, more funds in the accounts than necessary to satisfy the obligations Motor City owed to UBT, this would be a different matter. However, given that these facts are not presently before this Court, we decline to explore this hypothetical scenario further.

D. WAIVER OF THE RIGHT TO SET OFF

Plaintiff argues that even if UBT had effectuated a setoff, it waived the right to set off by allowing Motor City to continue using its bank accounts after plaintiff's service of the garnishment, so UBT's perfected security interest is not a valid defense against a writ for garnishment. UBT argues that by failing to raise these arguments below, plaintiff has waived them, and even if they were not waived, they fail on the merits as well. We disagree with UBT on the former point, but agree on the latter.

Whether a secured party has waived its right to set off constitutes a question of law subject to review de novo. See *MacInnes*, 260 Mich App at 283 ("[T]he question of what constitutes a waiver is a question of law.").

We first hold that plaintiff has preserved this issue for appeal. Specifically, plaintiff noted in his trial briefs that UBT allowed Motor City to continue accessing its account and, therefore, there was never an informal hold placed on the account because funds were freely transferred. In rendering its decision, the trial court explained that it could "understand why a secured creditor might want to hold off on that as opposed to trying to compel . . . the debtor into some type of bankruptcy or to close down their operations, which would reduce the opportunity for the bank to collect on monies owed to it, again as a secured creditor." Therefore, the issue of whether UBT's permitting Motor City to continue accessing its account affected the right to set off was generally addressed below and thus was preserved for appeal. See *Lenawee Co v Wagley*, 301 Mich App 134, 164; 836 NW2d 193 (2013). We conclude that UBT did not waive its right to a setoff or its perfected security interest in Motor City's deposit accounts by authorizing

Motor City to continue to withdraw funds from its accounts after it defaulted on its loans.

Under Michigan law, a security interest in a deposit account is perfected when the secured party is in control of the account. MCL 440.9314(1) and (2). A secured party has control of a deposit account if "[t]he secured party is the bank with which the deposit account is maintained," MCL 440.9104(1)(a), "even if the debtor retains the right to direct the disposition of funds from the deposit account," MCL 440.9104(2). "[A] security interest held by the bank with which the deposit account is maintained has priority over a conflicting security interest held by another secured party." MCL 440.9327(c). Upon default, a bank that "holds a security interest in a deposit account perfected by control under [MCL 440.9104(1)(a)]" may "apply the balance of the deposit account to the obligation secured by the deposit account." MCL 440.9607(1)(d).

UBT did not waive its right to a setoff. Given that the loan documents executed by Motor City gave UBT a security interest in all of Motor City's deposit accounts at the bank, it is clear that UBT had a perfected security interest in Motor City's deposit accounts. It is undisputed that UBT permitted Motor City to continue withdrawing funds from its accounts, well after Motor City had defaulted on its loans. However, for the reasons previously stated, the court rules only require the garnishee to declare the right to a setoff that it *would* have, not to actually exercise that right. That being the case, and given the fact that UBT unquestionably had a superior right to the funds in all of Motor City's accounts, there can be no waiver of a right when the right to be asserted is absolute over the plaintiff, who has no more rights to the account funds than defendant

Motor City. *Blow*, 134 Mich App at 411-412; see also *Buckenhizer*, 267 Mich at 395.[10]

More broadly, UBT also did not waive its security interest. MCL 440.9315(1)(a) provides: "A security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest . . . ." However, while it is undisputed that UBT permitted Motor City to continue withdrawing funds from its accounts after Motor City defaulted, there are no facts to suggest that UBT authorized Motor City's dispositions of the funds in the account *free of UBT's security interest.*

Therefore, we conclude that UBT waived neither the right to a setoff nor its security interest by allowing Motor City to continue using its bank accounts after plaintiff's service of the garnishment. Accordingly, under the facts of this case, a perfected security interest is a valid defense against a writ for garnishment.

### E. COSTS AND ATTORNEY FEES

On cross-appeal, UBT argues that the circuit court should have awarded it costs and attorney fees pursuant to MCR 2.625(E)(2). We review for clear error the circuit court's decision to impose sanctions on the ground that an action was frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591. *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 533-534; 773 NW2d 57 (2009). We review for an abuse of discretion the circuit court's decision whether to award costs and attorney fees in a garnishment

---

[10] This Court has recognized that "a bank may, by express agreement, waive its right to set-off[.]" *Hansman*, 121 Mich App at 429. However, there are no facts to suggest that UBT made an express waiver.

action under MCR 2.625(E)(2). See *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008).

UBT requested an award of costs and attorney fees in the circuit court, but did not do so on the basis of MCR 2.625(E)(2). Instead, UBT claimed that it was entitled to an award of costs and attorney fees for having to defend against plaintiff's garnishment request, which it described as frivolous and unfounded. Accordingly, although the issue of UBT's entitlement to costs and attorney fees under MCR 2.625(A)(2) and MCL 600.2591 is otherwise preserved, the issue of UBT's entitlement to costs and attorney fees under MCR 2.625(E)(2) is not preserved for appellate review. See *Wagley*, 301 Mich App at 164.

The obvious problem is that UBT cites only MCR 2.625(E)(2) on cross-appeal and does not argue that it is entitled to costs and attorney fees for having been required to defend against a frivolous action. An issue that is neither contained in the statement of questions presented nor briefed on appeal is not properly presented for this Court's review. MCR 7.212(C)(5) and (7); *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 66; 807 NW2d 354 (2011); *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). In other words, the specific issue that is otherwise preserved for appellate review has not been properly presented, and the specific issue that has been properly presented is unpreserved for appellate review.

Regardless of preservation issues, we conclude that UBT is not entitled to costs and attorney fees under MCR 2.625(A)(2) and MCL 600.2591 for having to defend against a frivolous action. MCR 2.625(A)(2) and MCL 600.2591 "mandate[] that a court tax costs . . . to reimburse a prevailing party for its costs incurred

during the course of frivolous litigation." *LaRose Market, Inc v Sylvan Center, Inc,* 209 Mich App 201, 210; 530 NW2d 505 (1995). Given that there was no binding precedent governing whether a garnishee is required to actually exercise its right to a setoff in order to deny the release of funds pursuant to a writ of garnishment, the instant garnishment action was not frivolous. Additionally, in its order, the trial court specifically found that the disclosure form UBT used was "misleading" and cited this as one of its reasons for denying attorney fees. Even if this issue were properly before this Court, we would be unable to conclude that the trial court clearly erred in this regard. Therefore, UBT is not entitled to costs or attorney fees under MCR 2.625(A)(2) and MCL 600.2591.

Further, MCR 2.625(E) specifically governs the taxation of costs and award of attorney fees in garnishment proceedings. MCR 2.625(E)(2) applies when the issue of the garnishee's liability to the principal defendant, here Motor City, has been brought to trial, as it was in this case. MCR 2.625(E)(2) provides:

> The court may award the garnishee defendant, against the plaintiff, the total costs of the garnishee defendant's defense, including all necessary expenses and reasonable attorney fees, if the issue of the garnishee defendant's liability to the principal defendant is tried and
>
> (a) the garnishee defendant is held liable in a sum no greater than that admitted in disclosure, or
>
> (b) the plaintiff fails to recover judgment against the principal defendant.
>
> In either (a) or (b), the garnishee defendant may withhold from the amount due the principal defendant the sum awarded for costs, and is chargeable only for the balance.

Because UBT did not request attorney fees pursuant to MCR 2.625(E)(2) in the circuit court, thereby failing to

preserve this particular issue, defendant has waived this issue on appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (holding that "a litigant must preserve an issue for appellate review by raising it in the trial court," and failure to do so waives that issue on appeal). However, we note that had UBT raised this issue in the trial court, the decision to award attorney fees and costs would have been discretionary with the trial court because the court rule's use of the word "may" indicates that the rule merely permits, but does not require, the trial court to award the garnishee defendant attorney fees and costs if the conditions in the court rule have been met. See *People v Watkins*, 491 Mich 450, 483-484; 818 NW2d 296 (2012) (explaining that the generally accepted meaning of "may" is that it indicates something is permissive rather than mandatory).

Affirmed.

MURPHY, C.J., concurred with MURRAY, J.

JANSEN, J. (*concurring in part and dissenting in part*). I fully concur with parts I, II, III(A), III(B), and III(E) of the majority opinion. I must respectfully dissent, however, with respect to parts III(C) and III(D) of the majority opinion.

MCR 3.101(H) governs the matter of garnishee disclosures. The majority correctly points out that, among other things, MCR 3.101(H)(1)(a) requires a garnishee to "claim[] any setoff that the garnishee *would* have against the defendant . . . ." (Emphasis added). Given the language of this court rule, the majority concludes that *making a claim* of setoff is not the same as *exercising a right* of setoff. The majority goes on to conclude that, for purposes of MCR 3.101(H), a gar-

nishee must only *claim* its right of setoff and need not ever actually *exercise* the right. I cannot agree.

In my opinion, the language of MCR 3.101(H)(1)(a), standing alone, is insufficient to answer the question presented in this case. As an initial matter, I believe that the majority's interpretation of MCR 3.101(H)(1)(a), permitting a garnishee to merely claim a right of setoff without ever exercising it, facilitates collusion between the garnishee and judgment debtor to defeat the garnishor's claim. Indeed, I believe this is exactly what happened in the present case. Plaintiff, as a judgment creditor, already had a valid, fully adjudicated claim against Motor City. Motor City had been in default on its loan obligations for six months at the time UBT's garnishee disclosure was submitted on January 29, 2010. Yet UBT continued to allow Motor City to use its deposit accounts and withdraw funds therefrom, and, in fact, shortly thereafter discounted Motor City's notes and sold them, totally defeating the rights of the garnishor. UBT's actions in this regard were certainly inconsistent with any purported intent to set off. *Mich Carpenters' Council Pension Fund v Smith & Andrews Construction Co*, 681 F Supp 1252, 1255 (ED Mich, 1988).

Instead, I conclude that a garnishee must seasonably exercise its right of setoff in order to claim the setoff under MCR 3.101(H)(1)(a). The general rule is that "[w]here a garnishee claims a debt due from the debtor as a set-off, the garnishee *must in fact apply* such debt on the amount due from him or her to the debtor." 38 CJS, Garnishment, § 272, p 542 (emphasis added). Similarly, § 4-303(1) of the Uniform Commercial Code (UCC) suggests that a bank's right of setoff against a customer's deposit accounts is not effective until it is "exercised." See *Baker v Nat'l City Bank of Cleveland*, 511 F2d 1016, 1018 (CA 6, 1975); see also Official

Comment 5 to UCC § 4-303(1) (stating that "[i]n the case of setoff the effective time is when the setoff is actually made"). The Michigan Legislature has adopted § 4-303(1) of the UCC, MCL 440.4303(1), evidencing a legislative intent that bank setoffs be "exercised" before becoming effective.

Perhaps more importantly, other courts have held that no setoff can be claimed until the bank performs some overt act accomplishing the setoff and makes a record verifying that the setoff has in fact been exercised. *Mich Carpenters' Council*, 681 F Supp at 1255; see also *Walters v Bank of America Nat'l Trust & Sav Ass'n*, 9 Cal 2d 46, 55-58; 69 P2d 839 (1937). "[T]he act must be unequivocal, objectively ascertainable and final . . . ." *Normand Josef Enterprises, Inc v Connecticut Nat'l Bank*, 230 Conn 486, 506; 646 A2d 1289 (1994). The law requires something more than a mere declaration of intent to exercise the setoff. See *Baker*, 511 F2d at 1018; see also *In re Archer*, 34 BR 28, 30 (Bkrtcy ND Tex, 1983).

It is undisputed that UBT never exercised the setoff against Motor City's deposit accounts. UBT did not withhold or remove money from the deposit accounts and certainly did not apply any of the deposited funds toward Motor City's loan debt. Nor did it, for obvious reasons, make any record verifying that it had made a setoff. At most, UBT declared its intent to possibly exercise a setoff at some future time. This was not sufficient. See *Baker*, 511 F2d at 1018. Mere declarations by a bank, accompanied by no affirmative acts or steps to record the transaction, are insufficient to support the bank's claimed right of setoff. *Id.* at 1019.

In order to properly invoke its claimed right of setoff against Motor City's deposit accounts, UBT was re-

quired to actually exercise the setoff and apply the deposited funds toward Motor City's outstanding loan debt. I conclude that, because UBT never exercised its claimed right of setoff against the funds in Motor City's deposit accounts, it was not entitled to claim the right on its garnishee disclosure or rely on the right to deny the release of Motor City's deposited funds to plaintiff under the writ of garnishment. See *Mich Carpenters' Council*, 681 F Supp at 1255.

I further conclude that, even if UBT had exercised its right of setoff, its subsequent actions unquestionably constituted a waiver of that right. "[A] garnishee's treatment of a debtor's assets which is inconsistent with the claimed setoff is a waiver of that right in the face of the garnish[o]r's claim." *Id.* Even after submitting its garnishee disclosure, UBT continued to allow Motor City to use its deposit accounts and withdraw funds therefrom. In my opinion, this conduct amounted to a knowing waiver of any setoff right that UBT may have possessed.

It also strikes me that UBT waived its perfected security interest in Motor City's deposit accounts.[1] "A security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof *unless the secured party authorized the disposition free of the security interest . . . .*" MCL 440.9315(1)(a) (emphasis added). Under this section, which is derived from the former UCC § 9-306(2), a

---

[1] The loan documents executed by Motor City gave UBT a security interest in all of Motor City's deposit accounts at the bank. Under Michigan law, a security interest in a deposit account is perfected when the secured party is in control of the account. MCL 440.9314(1) and (2); *United States v One Silicon Valley Bank Account*, 549 F Supp 2d 940, 959 (WD Mich, 2008). A secured party has control of a deposit account if "[t]he secured party is the bank with which the deposit account is maintained." MCL 440.9104(1)(a).

secured party that authorizes the disposition or dissipation of collateral waives its security interest in that specific collateral. See *Lifewise Master Funding v Telebank*, 374 F3d 917, 923-924 (CA 10, 2004); see also *Producers Cotton Oil Co v Amstar Corp*, 197 Cal App 3d 638, 647; 242 Cal Rptr 914 (1988); *Colorado State Bank of Walsh v Hoffner*, 701 P2d 151, 153 (Colo App, 1985). In my opinion, UBT waived its perfected security interest by authorizing Motor City to continue withdrawing funds from its deposit accounts after it had defaulted. See MCL 440.9315(1)(a); see also *In re Mycro-Tek, Inc*, 191 BR 188, 194-195 (Bkrtcy D Kan, 1996).

In sum, I do not believe that MCR 3.101(H)(1)(a) permits a garnishee to merely claim a right of setoff without actually exercising the right in a seasonable manner. On the contrary, I conclude that in order to claim a right of setoff on its garnishee disclosure under MCR 3.101(H)(1)(a), UBT was required to actually exercise the setoff and apply the funds in Motor City's deposit accounts toward the outstanding loan debt. See *Mich Carpenters' Council*, 681 F Supp at 1255. In my opinion, UBT is liable to plaintiff in the amount of Motor City's funds on deposit with the bank at the time the writ of garnishment was served on January 23, 2010, not to exceed the amount of the underlying judgment plus statutory interest. See MCR 3.101(O)(1). I would reverse the circuit court's ruling on this issue and remand for entry of judgment in favor of plaintiff accordingly.