*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGJELIN NDOCI,

      Plaintiff/Counterdefendant-Appellee,

v

RE CAPITAL MANAGEMENT, LLC and
ELIZABETH DAVIS,

      Defendants/Counterplaintiffs-
      Appellants.

UNPUBLISHED
March 16, 2023

No. 359328
Oakland Circuit Court
LC No. 2019-176462-CH

Before: MURRAY, P.J., and RIORDAN and YATES, JJ.

PER CURIAM.

Defendants, R.E. Capital Management, LLC ("RE Capital") and Elizabeth Davis ("Davis"), appeal as of right the trial court's judgment entered after a bench trial. The court awarded plaintiff, Angjelin Ndoci, $175,287.81 for his breach-of-contract claim against Davis. The court also awarded RE Capital $210,500, plus interest at a rate of 10% from February 4, 2019, to August 4, 2019 ($10,750), and 5% from August 4, 2019, through October 4, 2021 ($24,187.50), for a total sum of $245,437.50 on its counterclaim against plaintiff. The court also set aside a foreclosure and sheriff's sale initiated by RE Capital and denied Davis's counterclaims against plaintiff. The court ordered that the proceeds from the sales of two properties ($768,533.69) were to be disbursed to RE Capital in the amount of $591,000, plus $96,768.90, in full satisfaction of amounts owed by plaintiff to RE Capital, and $80,764.79 to plaintiff to be credited toward the damage award against Davis. We affirm.

## I. BACKGROUND

This case arises out of a failed joint venture between plaintiff and Davis to build houses on two residential lots in Oakland Township. Plaintiff grew up in Albania and immigrated to the United States in 1999. Upon his arrival and for more than 20 years after, plaintiff started painting, installing drywall and tiles, and learning about construction. In 2015, plaintiff built his first house in Richmond. Plaintiff was not a licensed builder, but he testified that, as the homeowner, he was allowed to apply for the permits to build the Richmond house. While he was building the

Richmond house, plaintiff ran out of money and was introduced to Davis and RE Capital as a source of funding.

Davis has a nonprincipal associate broker's license, is a licensed mortgage broker and lender, and is co-owner of RE Capital with Ronald Saoud. Davis and Saoud started RE Capital as a commercial lending company to help commercial companies and builders obtain loans that banks considered too risky. After Saoud visited the Richmond property, he and Davis agreed that RE Capital would loan plaintiff $120,000. When plaintiff was close to finishing his work, he asked Davis if she would list the Richmond house for sale. She did and the property sold for $350,000; plaintiff received $160,000, and RE Capital was paid the money that plaintiff owed.

After the closing on the Richmond house in April 2017, plaintiff and Davis (who were now dating) entered into an agreement whereby plaintiff would build two houses on two lots at 3019 and 3034 Cairncross Road in Oakland Township and split the costs and proceeds with Davis. At trial, plaintiff and Davis disagreed on many of the terms of their agreement. However, one of the undisputed terms of the agreement was that Davis would pay half of the interest-only payments on the loan borrowed from RE Capital for construction. In January 2019, Davis stopped making those payments. Plaintiff made his last payment in February 2019, because he could not afford to make the full payments. In August 2019, Davis and Saoud decided that RE Capital should foreclose on the properties. A sheriff's sale was held, and RE Capital bought the properties for $723,100.22.

Plaintiff filed a complaint alleging fraud in the inducement, fraudulent misrepresentation, silent fraud or innocent misrepresentation, breach of contract, and unjust enrichment and requested declaratory relief to cancel or set aside the sheriff's sale. Davis filed a counterclaim for breach of contract and breach of fiduciary duty. RE Capital also filed a counterclaim alleging that it bought the properties at the foreclosure sale for $723,100.22, that the properties were vacant, newly constructed homes, and considered abandoned under Michigan law. RE Capital further alleged that because the properties were abandoned, the redemption period was 30 days, and plaintiff failed to redeem the properties. RE Capital asked the trial court to enter a judgment against plaintiff in the amount of $723,100.22, plus interest, costs, taxes, expenses and attorney fees; declare that it had a valid first-priority mortgage lien on the properties; declare plaintiff personally liable for the mortgage debt; declare plaintiff in default; declare the sheriff's sale to be proper and lawful; declare that the redemption period was 30 days because the properties were abandoned; and enter a deficiency judgment for any unpaid debt after applying the sale proceeds.

In March 2020, the trial court entered stipulated orders to sell the Cairncross properties, which occurred that summer. The trial court subsequently entered stipulated orders placing the sale proceeds for the Cairncross properties ($768,533.69) with the court clerk, and later entered judgment as previously outlined.

## II. ANALYSIS

Defendants argue that the trial court erred by concluding that Davis breached the agreement with plaintiff, erred in its calculation of damages in favor of plaintiff against Davis, and clearly erred by concluding that plaintiff did not owe an additional $74,500 for funding fees and cash disbursements.

The trial court's findings of fact following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016); see also *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). This Court also reviews the trial court's determination of damages following a bench trial for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (citation and quotation omitted).

To prevail on a breach-of-contract claim, a plaintiff must establish that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the plaintiff. *Miller–Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

There was no dispute among the parties that plaintiff and Davis entered into an agreement or joint venture to build two houses on the Cairncross properties and that one of the terms of the agreement was that Davis contribute half of the interest-only installment payments owed to RE Capital. According to Davis, however, she was only required to make those payments for six to nine months, rather than to completion of the project as found by the trial court, because that was the length of time in which plaintiff agreed to build the houses. In support of her argument, Davis testified that plaintiff told her many times that he could build the two houses in six to nine months, while her assistant, Brandi Kesner, testified that she heard plaintiff state many times that he would finish construction of the houses within six to nine months. Additionally, Davis relied on the fact of plaintiff's alleged failure to prove how long the parties intended that their agreement would last.

Conversely, plaintiff testified that he and Davis agreed that Davis would own 3019 Cairncross and, as such, she would be responsible for the costs and would receive the proceeds of any sale associated with 3019 Cairncross. In turn, plaintiff would own 3043 Cairncross and be responsible for the costs and would receive the proceeds of any sale associated with it. Plaintiff also testified that each party agreed to pay for all the costs associated with their individual property. Plaintiff testified that he and Davis's agreement ended with the sale of the properties.

To the extent that the testimony of plaintiff and Davis conflicted, the trial court stated:

> The actions to which Davis admits, to wit: not advising Saoud of her joint venture with Ndoci; the practices of RE Capital to avoid taxes by falsifying the amount of consideration on deeds; and providing Ndoci with no means of challenging title defects by providing only a quit claim deed, cause the Court to find that much of her testimony is not credible. Any decision to ignore the testimony of Davis is based on these facts.

There was conflicting testimony regarding the length of the parties' agreement. Plaintiff testified that the agreement began with the purchase of the lots and continued through the sale of the properties to the division of the proceeds. Davis testified that the agreement ended after nine months, even though plaintiff continued to make payments for 19 months. Davis's arguments on appeal amount to a disagreement with the trial court's resolution of the conflicting testimony, and she asks this Court to reach a different conclusion from the evidence. The standard of review we give to the trial court's findings of fact requires rejection of Davis's position.

"Findings of fact regarding matters contested at a bench trial are sufficient if they are '[b]rief, definite, and pertinent,' and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995), citing MCR 2.517(A)(2). An appellate court will give deference to "the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003) (quotation marks and citation omitted). Clearly, the trial court did not find Davis's testimony regarding the six-to-nine-month contract term credible. Not only was the trial court's judgment of Davis's credibility based on its ability to observe her as a witness, but it was also based on her testimony that she did not reveal to Saoud her agreement with plaintiff when RE Capital agreed to finance plaintiff's construction, or when she and Saoud agreed to foreclose on plaintiff's properties. Based on our review of the record, Davis has failed to establish that the trial court's challenged findings with respect to plaintiff's breach-of-contract claim were clearly erroneous, and accordingly, she is not entitled to relief. *Smith*, 331 Mich App at 215.

Davis alternatively argues that plaintiff had already breached the agreement by being over budget and spending his time and resources on another project, and thus she was justified in an anticipatory breach. In *Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999), this Court explained:

> Under the doctrine of repudiation or anticipatory breach, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance. In determining whether a repudiation occurred, it is the party's intention manifested by acts and words that is controlling, not any secret intention that may be held.

However, Davis failed to offer any evidence that plaintiff unequivocally declared his intention not to perform until the end of the contract. Moreover, the trial court did not clearly err in finding that the evidence did not support Davis's claim that plaintiff's work at another property was a breach of their agreement, particularly considering her participation in and facilitation of that other project.

Defendants alternatively argue that if the trial court did not err in finding that Davis breached the agreement, we should hold that the trial court erred in calculating plaintiff's damage award.

The trial court concluded that the 3043 Cairncross property would have sold at $490,000 but for Davis's breach. From that sales price, the court deducted $2,288 that was paid to Devonshire Title, $3,973 in transfer tax and recording fees; $6,665.54 in liens, $13,656 in seller concessions reflecting unfinished work, $16,753.53 to Linnell and Associates for a tax advance, and $50,124.12 to RE Capital for work done on the premises, for a net balance of $396,539.81. The court then subtracted the amount plaintiff borrowed from RE Capital for 3043 Cairncross in the amount of $210,500, plus interest in the amount of $10,750. The trial court noted that it calculated the interest amount assuming that the house would have sold by August 4, 2019, without the breach.

Defendants argue that awarding $175,287.81 to plaintiff afforded him an unearned profit because in actuality the joint venture suffered a loss. However, defendants acknowledge that plaintiff contributed $170,000 to the project and paid $10,750 in interest. Plaintiff, whom the trial court found more credible, testified that he contributed between $207,000 and $210,000 of his own money to the venture. Therefore, the trial court did not award plaintiff a profit. While the trial court's judgment allowed plaintiff to recover his initial investment of $170,000, he clearly still suffered a loss on the project.[1]

With regard to the amount of interest plaintiff owed from August 4, 2019, through October 4, 2021, the trial court awarded 5% of that amount to RE Capital out of the proceeds. However, the court did not credit that amount to the judgment against Davis because the court held that, but for Davis's breach, the property would have been sold by August 4, 2019. The trial court thoroughly explained its reasoning regarding the interest owed, and awarded RE Capital plaintiff's share of the interest and calculated Davis's share in its award to RE Capital. With regard to the additional reimbursement of $6,537.56 that RE Capital argues plaintiff owed, defendants did not provide evidence that this expense was separate and distinct from the $50,124.12 that was credited to RE Capital in the settlement statement. Moreover, this expense was one that RE Capital claimed in the foreclosure sale, which the trial court set aside. We conclude that the trial court's award squarely fell within its findings on liability and was not in error.

Finally, defendants' arguments regarding the funding fees and cash disbursements ask this Court to reach a different factual conclusion based on the same evidence that the trial court considered. Again, defendants' arguments amount to disagreements with how the trial court resolved the conflicting evidence. This Court will not substitute its judgment for that of the trial court if there is evidence to support the trial court's findings. After reviewing the entire record, we are not left with a definite and firm conviction that a mistake was made. *Smith*, 331 Mich App at 215.

Saoud and Davis testified that there was no documentary evidence to support RE Capital's funding fees or cash disbursements. Plaintiff testified that he never agreed to pay the funding fees, and denied receiving any cash from Davis that was not cash that he had given her for safekeeping. Additionally, the language contained in the mortgage or the promissory notes did not provide for a funding fee. Defendants have not demonstrated that the trial court's findings were not supported by evidence, and after reviewing the record and giving deference to the trial court's credibility determinations, we are not left with "a definite and firm conviction that a mistake was made." *Id*.

---

[1] Defendants' argument that the $170,000 that plaintiff contributed should have been subtracted from his award is without merit. The trial court fashioned its judgment in line with plaintiff's testimony that he contributed $170,000 to 3043 Cairncross, and assumed responsibility for the money loaned for construction to that property.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ Christopher P. Yates