# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of CHARLOTTE WETSMAN

---

STEPHEN SHEFMAN,

        Appellant,

v

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.,

        Appellee,

and

THOMAS BRENNAN FRASER, Special
Fiduciary, JUDITH GAIL SILBERMAN, and
PETER SHEFMAN,

        Intervenors.

UNPUBLISHED
December 23, 2014


No. 317081
Oakland Probate Court
LC No. 2007-309955-DE

---

*In re* CHARLOTTE WETSMAN TRUST

---

STEPHEN ERIC SHEFMAN,

        Appellant,

v

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.,

        Appellee,

and

PETER ELLIOTT SHEFMAN, JUDITH GAIL

No. 317085
Oakland Probate Court
LC No. 2009-324688-TV

-1-

SILBERMAN, and THOMAS BRENNAN
FRASER,

        Intervenors.

_____

Before:  O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

During the administration of Charlotte Wetsman's estate, her son/personal representative amassed over $100,000 in attorney fees.  The probate court determined that the son utilized these legal services to improve his own position in squabbles with his siblings rather than to benefit the estate.  The court therefore denied the son's and attorney's request for payment from the estate, and instead held the son personally liable.  Counsel then sought to secure compensation from the son, requesting an attorney charging lien over the son's share of a separate trust created by Wetsman before her death.  The probate court granted counsel's petition, imposed the lien, and ordered the trustee to withhold the son's share from distribution.

We affirm the probate court's determination that the son was personally liable for the attorney's services, as well as the attorney's claimed rate and the total amount of fees awarded. However, we reverse the probate court's orders imposing an attorney charging lien against the trust proceeds.  Counsel's services did not create that pool of funds, rendering a common-law charging lien an inappropriate mechanism of recompense.  As this disposition changes the outcome of the proceedings, counsel is no longer the prevailing party and we must vacate the probate court's imposition of sanctions against the son personally.  And we remand for further proceedings consistent with this opinion.

I.  BACKGROUND

Charlotte Wetsman had three children: Stephen Shefman, Peter Shefman, and Judith Silberman.  During her life, Wetsman drafted a will and named Stephen Shefman (Shefman) as the personal representative of her estate.  She also created an inter vivos trust.  Upon her death, according to trust documents, Shefman would become trustee.  Following Wetsman's death, her children bitterly disputed the distribution of her property.  An estate action was filed in 2007. Shefman appeared not only as the personal representative but additionally as an attorney of record in that action.  Shefman also retained the services of Richard Siriani, a Miller Canfield attorney.

Peter challenged the validity of Wetsman's will, claiming that Shefman unduly influenced their mother.  Attorney Andrew J. Broder of Payne Broder & Fossee represented Shefman in the will validity challenge.  See *Payne Broder & Fossee, PC v Shefman*, unpublished opinion per curiam of the Court of Appeals, issued July 22, 2014 (Docket No. 312659). Shefman, as the estate personal representative, countered with a slander of title action against Peter, after which Peter was found liable.  That action resulted in only nominal damages, however.

In 2009, the probate court removed Shefman as personal representative of the estate, finding that his actions were more for his benefit than for the good of the estate. The court appointed Thomas Brennan Fraser as the successor personal representative. In 2009, the probate court initiated supervision of the trust administration. The court later removed Shefman as trustee and appointed Fraser to that post as well.

In a complex prior consolidated appeal involving the estate, trust, and slander-of-title actions, this Court affirmed various probate court orders challenged by Peter and Shefman. Among the myriad issues previously raised, Shefman challenged the attorney fees allowed by the probate court to cover his personally-supplied legal services in the estate action. This Court affirmed the probate court's decision to award less in fees than requested by Shefman in relation to the first accounting period. *In re Wetsman Estate*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2013 (Docket Nos. 292350, 292738, and 301356), unpub op at 11 (*Wetsman I*), unpub op at 11. This Court also affirmed the probate court's decision to disallow any charge to the estate for services provided by Siriani in the first accounting period on the ground that Siriani's work was performed for Shefman individually. *Id.* In the prior appeal, Shefman also challenged the probate court's decision regarding allowable attorney fees for his personal services during the period covered by his second and final account. However, Shefman raised no challenge to the probate court's decision to allow only $2,973 to be charged to the estate for Siriani's services during that timeframe. *Id.* at 4, 13.

While the prior appeal was pending, Miller Canfield filed claims of interest in both the trust and estate actions in connection with $111,440.76 of unpaid attorney fees and costs for work rendered by Siriani for the period of January 2008 through February 2010. After *Wetsman I* was issued, Miller Canfield filed a petition in the trust action to preclude successor trustee Fraser from making any distributions to Shefman until he satisfied a charging lien for the attorney fees and costs. Miller Canfield asserts that it also secured a charging lien in the estate action but only minimal property remained available to satisfy this obligation.

In January 2013, Miller Canfield sought summary disposition on its attorney-fee request. The probate court conducted a hearing and granted the motion in part. Specifically, the court found no genuine issue of material fact regarding the reasonableness of the Miller Canfield rate or the hours of attorney work claimed. The court expressed that the only remaining issues for the continued hearing were whether Shefman was personally liable for the remaining fees and, if so, whether a lien could be imposed against his share of the trust proceeds to satisfy the attorney-fee obligation. Following additional hearings on March 25 and May 3, the probate court found Shefman personally liable for the attorney fees and ordered Fraser to withhold Shefman's portion of the trust proceeds to recompense Miller Canfield.

Shefman appealed in both the trust and estate cases.

## II. STANDARDS OF REVIEW

We review a probate court's factual findings in a trust action and in relation to a motion for attorney fees for clear error and its dispositional rulings for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). A probate court abuses its discretion when it "chooses an outcome outside the range of reasonable and principled

-3-

outcomes." *Id.* We review de novo underlying issues of statutory interpretation and other legal issues. *Id.* We also review de novo challenges to a lower court's subject matter jurisdiction. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

We review de novo a probate court's grant of summary disposition. *Ducharme v Ducharme*, 305 Mich App 1, 5; 850 NW2d 607 (2014). Summary disposition is appropriate under MCR 2.116(C)(10) when, viewing the evidence in the light most favorable to the nonmoving party, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ATTORNEY CHARGING LIEN

First and foremost, the probate court erred in entering an attorney charging lien against Shefman's share of the trust proceeds. The decision to impose an attorney's lien is within the trial court's discretion. *Polen v Melonakos*, 222 Mich App 20, 24; 564 NW2d 467 (1997). Such liens are not granted by statute, but are a common-law construct. The lien "is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993).

But to what funds may a charging lien attach? Not every pool of money possessed by a client at the close of a legal matter amounts to a "judgment" or "recovery" secured by counsel. Attorney charging liens "automatically attach to funds or a money judgment recovered through the attorney's services." *Id.* at 477. They cannot attach, however, to real property over which an attorney secures title or possession for the client. *Id.* at 478. Nor may they attach to the proceeds from the sale of a house accomplished to comply with an Internal Revenue Service settlement. See *Dunn v Bennett*, 303 Mich App 767, 769, 778; 846 NW2d 75 (2014).

Here, Siriani's work did not secure Shefman's right to possess any trust proceeds. Siriani allegedly represented Shefman in *estate* matters, although Miller Canfield asserts that the estate was merged with the trust through a "pour over" provision. Shefman's right to possess some portion of the trust proceeds was not at issue even in the trust action; rather the manner of administering the trust was challenged among the siblings. Accordingly, even if Siriani provided representation in the trust case, Miller Canfield would not be entitled to a charging lien against the trust proceeds because his legal efforts simply did not create or add to the total trust funds available for distribution to the beneficiaries. We therefore reverse the probate court's May 3, 2013 orders imposing an attorney charging lien and ordering Fraser to pay Miller Canfield's invoices from Shefman's share of the trust proceeds.[1]

---

[1] Given our resolution of this issue, we need not consider Shefman's additional claim that the attorney charging lien violated the spendthrift provision in the Wetsman trust.

-4-

## IV. SUBJECT-MATTER JURISDICTION

However, the probate court's inability to allow an attorney charging lien against the trust assets does not translate into a lack of authority to decide any issue relating to attorney fees. Contrary to Shefman's contentions, the probate court had the power to determine that Shefman was individually liable for the Miller Canfield fees and to order him to recompense his attorney.

Subject-matter jurisdiction refers to a court's "power to hear and determine a cause or matter." *Bowie v Arder*, 441 Mich 23, 36; 490 NW2d 568 (1992) (quotation marks and citation omitted). Subject matter jurisdiction "is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending." *Joy v Two-Bit Corp*, 287 Mich 244, 253; 283 NW 45 (1938) (quotation marks and citation omitted). Because subject matter jurisdiction "does not depend on the truth or falsehood of the charge," it must be gauged on the allegations raised at the commencement of the action. *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992).[2] If subject matter jurisdiction is lacking, the action is void "no matter what formalities may have been taken by the trial court." *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 544; 260 NW 908 (1935).

"The probate court . . . is a court of limited jurisdiction, deriving all of its power from statutes." *Manning v Amerman*, 229 Mich App 608, 610-611; 582 NW2d 539 (1998). That jurisdiction may not be expanded by court rule. *In re Kasuba Estate*, 401 Mich 560, 566; 258 NW2d 731 (1977); see also Const 1963, art VI, § 15 ("The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law."). In this matter, Shefman conceded in his response to Miller Canfield's motion that the probate court was permitted to compel him to pay attorney fees under MCR 5.117(D). This court rule provides that "[a]n attorney whose services are terminated retains the right to have compensation determined before the proceeding is closed." And the probate court relied upon this rule in considering Miller Canfield's request. As the probate court's jurisdiction must be defined by statute, the court erred to the extent that it looked only to the court rule as imbuing it with jurisdiction to consider Miller Canfield's claim.

---

[2] We note that this Court has distinguished *Altman* (along with various other cases) when subject matter jurisdiction is questioned based on the amount in controversy. See *Moody v Home Owners Ins Co*, 304 Mich App 415, 431-432; 849 NW2d 31 (2014), lv gtd ___ Mich ___; 853 NW2d 331 (2014). In *Moody*, this Court noted that subject matter jurisdiction based on the amount in controversy "will most often be determined by reviewing the amount of damages or injuries a party claims in his or her pleadings," just as when considering whether the nature of the claim falls within the court's jurisdiction. *Id.* at 430. However, *Moody* continued, the statutory amount-in-controversy jurisdictional provisions do not limit review to the point in time when the complaint is filed. Rather, the phrase "amount in controversy" encompasses "the amount the parties argue about, debate or controvert," which may increase or decrease as the proceedings and discovery progress. *Id.*

Nonetheless, the probate court had statutory authority to consider the attorney-fee dispute. Miller Canfield's claim for fees for Siriani's work did not originate with the request for an attorney charging lien. Rather, it began with its request for fee recovery against the Wetsman estate preceding *Wetsman I*. And it was within the probate court's power to decide that the work performed by Siriani actually benefited not the estate, but Shefman personally.

MCL 700.1302 governs the exclusive subject matter jurisdiction of probate courts and MCL 700.1303 governs the court's concurrent and equitable jurisdiction. Under MCL 700.1302(a), the probate court has exclusive legal and equitable jurisdiction over "[a] matter that relates to the settlement of a deceased individual's estate." The payment of attorney fees potentially related to the administration of the estate was certainly "[a] matter that relates to the settlement" of an estate.

Once the probate court determined that Shefman was the proper party from whom to pursue payment, it had the authority to consider the propriety of securing that payment by different methods. Under MCL 700.1302(b), the probate court's exclusive jurisdiction also includes "[a] proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary." Upon request by an interested person, the probate court may also instruct or direct a fiduciary concerning a matter within its jurisdiction, MCL 700.1102(d), such as directing payment from trust assets. Pursuant to MCL 700.1303(1)(a), the probate court has concurrent jurisdiction in regard to a decedent's estate or trust to take several actions, including the determination of a property right or interest. Moreover, under the Revised Judicature Act, a probate court has "the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions." MCL 600.847. That Miller Canfield requested and the probate court selected an improper method to secure payment for Siriani's work does not divest the court of subject matter jurisdiction.

Shefman complains that his fee dispute with Siriani is a personal matter in no way related to the trust or estate proceedings. This view is simply inaccurate. Shefman signed a contract asserting, inaccurately as it was later determined, that he was seeking legal services on behalf of the Wetsman estate. He then amassed exorbitant legal bills, again improperly citing the estate as the client. This lulled Siriani into believing that he would be paid by the estate. And Miller Canfield was disappointed when it requested the expected payment for Siriani's work and the court considered the evidence and determined that the estate was not liable. That resolution would have collateral estoppel effect in any private action by Miller Canfield against Shefman for payment. The time for raising contract defenses was in the current fee dispute, and no new claim could avoid Shefman's liability.[3]

---

[3] Shefman also complains that Miller Canfield failed to file its petition for a charging lien in the estate action, choosing to file only in the trust action. As we conclude that a charging lien was not a proper method of enforcing the court's determination that Shefman was personally liable, we find this issue irrelevant. In any event, the estate and trust actions involved the same parties

-6-

## V. DISCOVERY AND SUMMARY DISPOSITION

Shefman also challenges the probate court's grant of summary disposition and the court's failure to allow discovery before considering the motion. First, we note that Shefman conceded to the reasonableness of Siriani's professional rate at the January 3 hearing: "I do not dispute the rate that Mr. Siriani seeks to recover fees at." He also agreed to the number of hours Siriani alleged that he spent on this matter: "I believe, by virtue of attaching his statements to those petitions, that the work was done, and that the fee that was charged . . . at a rate that I believed to be reasonable. And so I'm not arguing that now." Accordingly, Shefman waived any claim of error in this regard. See *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

In regard to Shefman's personal liability for attorney fees, we discern no discovery that was prohibited but could have assisted Shefman's defense. And the probate court correctly found no question of fact on this issue.

In challenging the probate court's ultimate ruling, Shefman contends that the court was prohibited from finding him liable as there was no contract between Shefman in his personal capacity and Miller Canfield or Siriani. This Court has held that "'[W]here the fiduciary was partially to blame for bringing about unnecessary litigation, the fiduciary rather than the estate should be responsible for the attorney's fees.'" *In re Nestorovski Estate*, 283 Mich App 177, 204; 769 NW2d 720 (2009), quoting *In re Valentino Estate*, 128 Mich App 87, 95-96; 339 NW2d 698 (1983). This conclusion is founded on the language of MCL 700.3720, which permits the personal representative of an estate to collect expenses from the estate incurred while defending or prosecuting an action on the estate's behalf "in good faith." *Nestorovski*, 283 Mich App at 203-204. Accordingly, pursuant to statute and caselaw, a personal representative who enters a contract with an attorney in his or her role as personal representative may nonetheless be found liable to recompense the attorney from his or her personal funds for actions not taken "in good faith." Shefman raises no challenge to the probate court's determination that he mismanaged the estate and brought actions for his own benefit rather than for the benefit of the estate. Absent any other error, as discussed below, we affirm the probate court's ultimate summary disposition ruling on Shefman's personal liability.

As noted, Shefman complains that an error requiring reversal exists because the probate court denied his right to discovery. MCR 5.131(A) provides that "[t]he general discovery rules apply in probate proceedings." Under MCR 5.213(B), discovery in a probate proceeding is limited to matters raised in the petition pending before the probate court. Here, the probate court did not totally foreclose discovery. Rather, the probate court ruled that if a "surprise" arose during the hearing, then it would order discovery. Fresh discovery was not required at that point, because such discovery had been conducted in relation to the attorney-fee dispute prior to the issuance of *Wetsman I*. That discovery encompassed the attorney engagement letter and the scope of Siriani's work. The attorney-fee dispute had even been the subject of earlier evidentiary hearings. Against this backdrop, the probate court determined that Shefman's request to depose

---

before the same court and therefore all parties and judicial officers were on notice of the petition as related to both actions.

Siriani in 2013 amounted to harassment. Under the circumstances, the probate court's decision to disallow further discovery without an adequate showing of need did not constitute an abuse of discretion.

The lack of additional discovery also did not render the summary disposition ruling premature. Summary disposition is only premature when further discovery stands "a fair chance of uncovering factual support for the opposing party's position." *Neumann v State Farm Mut Auto Ins Co*, 180 Mich App 479, 485; 447 NW2d 786 (1989). "[A] party opposing a motion for summary disposition because discovery is not complete must provide some independent evidence that a factual dispute exists." *Mich Nat'l Bank v Metro Institutional Food Serv, Inc*, 198 Mich App 236, 241; 497 NW2d 225 (1993). Siriani's deposition is the only additional discovery cited by Shefman on appeal in support of his claim that summary disposition was premature. However, Siriani had already testified in the earlier attorney-fee dispute. He was available and testified at the current evidentiary hearing. And the court indicated that if Siriani's testimony resulted in surprise, the court would allow additional discovery. Siriani's testimony evidently did not surprise Shefman as he raised no additional objection on any particular point for which he asserted required additional discovery. On this record, it does not appear that summary disposition was premature.

Shefman also raises a challenge to the summary disposition ruling based on an alleged lack of notice. Shefman contends that he "never received a copy of Appellee's Motion for Summary Disposition, Affidavit or Brief" in the *estate* case prior to the hearing. Shefman also asserts that Miller Canfield failed to serve its charging lien pleading against him in the *estate* case before filing its motion for summary disposition. Miller Canfield did serve all these documents on Shefman in the *trust* case, however. The two proceedings involved the same parties and were heard before the same probate court judge. The motions and petitions in both the trust and estate cases would have been identical. Accordingly, we have no doubt that Shefman was fully on notice in the estate case. We therefore affirm the probate court's summary disposition rulings.

## VI. SANCTIONS

Finally, Shefman challenges the probate court's order in the estate action imposing sanctions against him personally in the amount of $20,731.80 to be paid to Miller Canfield. When Shefman challenged Miller Canfield's request for an attorney charging lien and insisted upon an evidentiary hearing, the court stated:

> And let me warn you right now, Mr. Shefman, I'm going to seriously consider any request for sanctions against you for frivolous arguments. If it's made, I'm going to consider it. . . .
>
> Because it appears to me that, based on my previous decisions regarding fees, including Mr. Siriani's, and the fact that the Court of Appeals affirmed every single decision I made, citing the reasoning, okay, including my reasoning regarding who the services were provided to, okay, that your arguments might be considered frivolous.

-8-

At the conclusion of the three-day evidentiary hearing, Shefman actually asserted that Miller Canfield's action for attorney fees was "frivolous." The court noted, "That's in part the reason for the sanction, that frivolous argument." The court continued by admonishing Shefman for challenging its jurisdiction "in a frivolous way," by "seriously advanc[ing] a theory that Mr. Siriani has no right to compensation from anyone[.]"[4] In its written order, the court indicated that the sanctions were imposed pursuant to MCR 2.114(E), MCR 2.114(F), and MCR 2.625(A)(2) to benefit Miller Canfield. The sanctions were actually awarded in the estate action but were to be paid from Shefman's share of the trust proceeds.

MCR 2.114(B)(2)(b) provides that a party signing and filing a document must attest that the statements within are true to the best of his or her knowledge. By affixing his or her signature, the party certifies "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;" and "the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 2.114(D)(2)-(3). MCR 2.114(D) and (E) permit the imposition of sanctions if these provisions are violated:

> (E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

> (F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 2.625(A)(2), in turn, provides for the payment of a party's costs as sanctions when an action or defense is deemed frivolous. MCR 2.625 applies, however, only in favor of "the prevailing party in an action." MCR 2.625(A)(1).

We review for clear error a probate court's decision that an action or defense is frivolous and therefore merits the imposition of sanctions. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013); *Guerrero v Smith*, 280 Mich App 647, 677-678; 761 NW2d 723 (2008). "A decision is clearly erroneous when, although there may be evidence to support it, we

---

[4] At a November 1, 2012 hearing on this matter, Shefman argued, "I simply point that fact out to indicate that there are circumstances under which an attorney may render services . . . for which he is not entitled to be paid." The probate court was shocked and asked for clarification. Shefman reiterated that there are situations in which an attorney is not entitled to compensation from anyone. Shefman conceded, however, that Siriani had actually provided the work for which he sought compensation.

are left with a definite and firm conviction that a mistake has been made." *Guerrero*, 280 Mich App at 677.

Here, we empathize with the probate court's determination that Shefman's challenges to the imposition of attorney fees against him was frivolous. However, Miller Canfield sought compensation through an attorney charging lien. As we have reversed the orders imposing an attorney charging lien against Shefman's share of the trust assets, Miller Canfield is no longer technically a prevailing party as required under MCR 2.625. And the court made no real findings under MCR 2.114, suggesting that its order was not truly based on that statute. On remand, the probate court may find another route by which to order Shefman's payment of Miller Canfield's fees. At that time, the probate court may reconsider the sanction issue. At this time, we are constrained to vacate the order imposing sanctions and ordering their payment from Shefman's share of the trust proceeds.

We affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher