*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THE CADLE COMPANY,

        Plaintiff-Appellant/Cross-Appellee,

v

LAVAN HAWKINS, individually and as trustee of
the LAVAN HAWKINS-PHI TRUST,

        Defendants,

and

LYNN M. HAWKINS, also known as LYNN M.
SMITH,

        Garnishee-Defendant-Appellee/Cross-
        Appellant,

and

TREMENDOUS BRANDS GROUP, LLC,

        Garnishee-Defendant-Appellee.

UNPUBLISHED
September 21, 2023

No. 362697
Oakland Circuit Court
LC No. 2018-167406-CK

THE CADLE COMPANY,

        Plaintiff-Appellee,

v

LAVAN HAWKINS, individually and as trustee of
the LAVAN HAWKINS-PHI TRUST,

        Defendants,

and

No. 363491
Oakland Circuit Court
LC No. 2018-167406-CK

-1-

LYNN M. HAWKINS, also known as LYNN M.
SMITH,

        Garnishee-Defendant-Appellant,

and

TREMENDOUS BRANDS GROUP, LLC,

        Garnishee-Defendant-Appellee.

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

In these consolidated[1] appeals, in Docket No. 352697, plaintiff, The Cadle Company ("Cadle"), appeals as of right the trial court's opinion and order denying the garnishment claims against garnishee-defendants, Lynn M. Hawkins ("Lynn") and Tremendous Brands Group, LLC ("Tremendous"). On cross-appeal, Lynn argues the trial court erred in denying her motion for attorney fees and costs under MCR 2.625. In Docket No. 363491, Lynn challenges the trial court's order denying Lynn's motion to review the Clerk of Court's (the "court clerk's") decision rejecting Lynn's bill of costs. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from a 2013 judgment entered against defendant LaVan Hawkins in Cook County, Illinois (the "Illinois judgment"). LaVan was a successful restaurateur who owned many restaurants in the Detroit-metro area and beyond. LaVan was Lynn's husband. LaVan apparently never paid his obligations under the Illinois judgment. As such, Cadle noticed the trial court of the Illinois judgment and petitioned for entry of the Illinois judgment, which the trial court accepted.

To collect on the Illinois judgment, Cadle then filed writs of nonperiodic garnishment against a number of businesses associated with LaVan, including one against Tremendous.[2] Cadle also filed periodic and nonperiodic writs of garnishment against Lynn in her personal capacity. LaVan died at about the same time as these writs were filed.

---

[1] *The Cadle Co v Hawkins*, unpublished order of the Court of Appeals, entered November 2, 2022 (Docket Nos. 362697 and 363491).

[2] Tremendous has not appeared in this action. It was not represented by counsel in the proceedings below or in these appeals.

Tremendous filed a disclosure denying any liability toward LaVan. Lynn failed to respond to the writs of garnishment and Cadle moved for a default judgment against Lynn. The trial court granted a default judgment of the nonperiodic garnishment, but denied it as to the periodic garnishment. Shortly thereafter, Lynn submitted two garnishee disclosures related to the periodic and nonperiodic writs of garnishment, respectively. Her disclosures denied any liability toward LaVan. Lynn also moved to set aside the default judgment, which the trial court granted.

The case proceeded to a bench trial. Ahead of trial, Lynn moved for attorney fees and costs because the garnishment action against her was frivolous. The arguments at trial largely centered on assets held by Nathanial Jones, LaVan's Maryland-based attorney, in an interest on lawyer trust account ("IOLTA"). Cadle argued Lynn controlled these assets, which Lynn denied. The trial court found Lynn was not liable in the garnishment action because she did not control LaVan's assets. It denied Lynn's motion for attorney fees. Regarding Tremendous's liability, the trial court found that Cadle failed to initiate discovery. Therefore, the court was required to accept as true Tremendous's denial that it was indebted to LaVan.

Lynn moved for clarification as to whether the trial court intended to award costs, despite its denial of attorney fees. The trial court entered an order stating "that an award of attorney fees is not warranted." Lynn later filed a bill of costs. The court clerk rejected the bill of costs because it was untimely. Lynn moved for review of this decision. The trial court denied the motion for review.

## II. GARNISHMENTS

Cadle generally argues the trial court erred in rejecting its writs of garnishment against Tremendous and Lynn. We disagree.

## A. STANDARD OF REVIEW

"The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). To the extent this case requires the interpretation of statutes or court rules, this Court's review is de novo. *Id*. at 96; *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). "Our goal when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text. If the text is unambiguous, we apply the language as written without construction or interpretation." *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

## B. FOUNDATIONAL LAW

The prevailing party in a lawsuit may utilize a garnishment to satisfy the claim. *Premiere Prop Servs, Inc v Crater*, 333 Mich App 623, 632; 963 NW2d 430 (2020), quoting *Ward v Detroit Auto Inter-Ins Exch*, 115 Mich App 30, 35; 320 NW2d 280 (1982). "The design of a garnishment proceeding is to preserve a principal defendant's assets in the control of the garnishee, i.e., one who has property or money in his possession belonging to the defendant, so that the assets may later be accessible to satisfy a judgment against the principal defendant." *Id*.

Garnishment actions in Michigan are authorized by statute. *Nationsbanc Mtg Corp of Georgia v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000). And, "[t]he court may exercise its garnishment power only in accordance with the Michigan Court Rules." *Id*. MCR 3.101 governs postjudgment garnishment actions. *Id*. There are two types of postjudgment garnishment actions—periodic and nonperiodic. MCR 3.101(B)(1) and (2).

"Periodic garnishments are garnishments of periodic payments . . . ." MCR 3.101(B)(1). This "includes but is not limited to, wages, salary, commissions, bonuses, and other income paid to the defendant during the period of the writ; land contract payments; rent; and other periodic debt or contract payments." MCR 3.101(A)(4). "Nonperiodic garnishments are garnishments of property or obligations other than periodic payments." MCR 3.101(B)(2).

Relevant here, a garnishee is liable to pay a plaintiff for:

> (a) all tangible or intangible property belonging to the defendant in the garnishee's possession or control when the writ is served on the garnishee, unless the property is represented by a negotiable document of title held by a bona fide purchaser for value other than the defendant;
>
> * * *
>
> (d) all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendant;
>
> * * *
>
> (f) the portion of the defendant's earnings that are not protected from garnishment by law (see, e.g., 15 USC 1673) as provided in subrule (B);
>
> * * *
>
> (h) all tangible or intangible property of the defendant that, when the writ is served on the garnishee, the garnishee holds by conveyance, transfer, or title that is void as to creditors of the defendant, whether or not the defendant could maintain an action against the garnishee to recover the property; and
>
> (i) the value of all tangible or intangible property of the defendant that, before the writ is served on the garnishee, the garnishee received or held by conveyance, transfer, or title that was void as to creditors of the defendant, but that the garnishee no longer held at the time the writ was served, whether or not the defendant could maintain an action against the garnishee for the value of the property. [MCR 3.101(G).]

Further,

> Any person summoned as a garnishee or any officer, agent, or other person who appears and answers for a corporation summoned as a garnishee, who knowingly and wilfully answers falsely upon his disclosure or examination on oath is liable to the plaintiff in garnishment . . . to pay out of his own goods and estate the full amount due on the judgment recovered with interest, to be recovered in a civil action. [MCL 600.4051.]

Under MCR 3.101(M), "[i]f there is a dispute regarding the garnishee's liability . . . the issue shall be tried in the same manner as other civil actions."

> (2) The verified statement acts as the plaintiff's complaint against the garnishee, and the disclosure serves as the answer. The facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1)[3] or another party has filed a pleading or motion denying the accuracy of the disclosure. Except as the facts stated in the verified statement are admitted by the disclosure, they are denied. Admissions have the effect of admissions in responsive pleadings. The defendant and other claimants added under subrule (L)(2) may plead their claims and defenses as in other civil actions. The garnishee's liability to the plaintiff shall be tried on the issues thus framed.
>
> * * *
>
> (5) On the trial of the garnishee's liability, the plaintiff may offer the record of the garnishment proceeding and other evidence. The garnishee may offer evidence not controverting the disclosure, or in the discretion of the court, may show error or mistakes in the disclosure. [MCR 3.101(M) (footnote added).]

If a court finds that a garnishee is liable to a defendant,

> Judgment may be entered against the garnishee for the payment of money or the delivery of specific property as the facts warrant. A money judgment against the garnishee may not be entered in an amount greater than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment. Judgment for specific property may be enforced only to the extent necessary to satisfy the judgment against the defendant. [MCR 3.101(O)(1).]

In the analysis below, we explain why the trial court did not err in rejecting the claims against Tremendous and Lynn.

---

[3] MCR 3.101(L)(1) states: "Within 14 days after service of the disclosure, the plaintiff may serve the garnishee with written interrogatories or notice the deposition of the garnishee. The answers to the interrogatories or the deposition testimony becomes part of the disclosure."

## C. TREMENDOUS'S LIABILITY

The trial court determined Tremendous was not liable because Cadle failed to timely serve interrogatories or notices of deposition within 14 days. Under the court rules, the trial court was required to accept as true Tremendous's denial of liability. On appeal, Cadle challenges this determination, pointing to Tremendous's failure to timely file its disclosure. Cadle believes that Tremendous's failure to timely file its disclosure is dispositive to the question of whether the trial court was required to accept as true Tremendous's denial of liability.

Under MCR 3.101(H), "[t]he garnishee shall file with the court and deliver to the plaintiff and defendant, a verified disclosure within 14 days after being served with the writ." Tremendous received the writ of garnishment on March 21, 2019, and it filed the disclosure on April 9, 2019. By filing the disclosure on April 9, 2019, Tremendous's disclosure was untimely.

Under MCR 3.101(S)(1)(a), "[i]f the garnishee fails to disclose or do a required act within the time limit imposed, a default may be taken as in other civil actions." In other words, Cadle's remedy to Tremendous's failure to timely file its disclosure was to seek a default judgment against Tremendous. Cadle never sought a default judgment against Tremendous. As a result, the fact that the disclosure was filed late was a nonissue, and the trial court was required to accept it as if it were timely.

The court rules require that the facts asserted in a disclosure must be accepted as true "unless the plaintiff has served interrogatories or noticed a deposition" within 14 days from the filing of the disclosure. MCR 3.101(M)(2). Cadle never served Tremendous interrogatories, or noticed a deposition to Tremendous. Thus, the trial court was required to accept as true Tremendous's assertion it was not indebted to LaVan. MCR 3.101(M)(2). Because Tremendous was not indebted to LaVan, there was no basis for the writ of garnishment. The trial court, therefore, correctly denied the garnishment against Tremendous.

On appeal, Cadle notes its initiation of discovery against Lynn in the garnishments against her personally. Cadle argues that because Lynn signed Tremendous's disclosure statement, that the discovery initiated in the garnishments against Lynn is somehow relevant to garnishment against Tremendous. But, Tremendous was a limited liability company ("LLC"), and its identity was distinct from that of its corporate representatives. See *Hills & Dales Gen Hosp v Pantig*, 295 Mich App 14, 20; 812 NW2d 793 (2011) ("A corporation is its own 'person' under Michigan law, an entity distinct and separate from its owners . . . ."). To conform with the court rule, Cadle needed to initiate discovery against Tremendous, LLC, not against Tremendous's corporate representatives. Thus, the initiation of discovery against Lynn in her personal capacity is not relevant to the issue of discovery against Tremendous.

## D. LYNN – PERIODIC GARNISHMENT

Cadle next challenges the denial of the periodic garnishment against Lynn. Lynn's disclosure regarding the periodic garnishment denied liability because LaVan was "not employed" and there was "no money owed to [LaVan]." The trial court agreed and denied Cadle's periodic garnishment because "LaVan was not an employee of [Lynn] and there is no evidence that [Lynn]

made periodic payments to LaVan such that liability could be found on the basis of the periodic garnishment disclosure."

Again, "[p]eriodic garnishments are garnishments of periodic payments . . . ." MCR 3.101(B)(1). There is nothing in the record showing Lynn made periodic payments to LaVan that would entitle Cadle to a periodic garnishment. Thus, the trial court did not err in denying Cadle's demand for a periodic garnishment.

## E. LYNN – NONPERIODIC GARNISHMENT

The next issue is whether the trial court erred in denying the nonperiodic writ of garnishment. Again, garnishees are liable for "all tangible or intangible property belonging to the defendant in the garnishee's possession or control when the writ is served on the garnishee . . . ." MCR 3.101(G)(1)(a). Whether Lynn had possession or control of LaVan's assets in the IOLTA was the central issue regarding the nonperiodic writ. To that end, the trial court found "that [the] IOLTA account [sic] contained LaVan's money, but also contained money that did not belong to LaVan." It further found,

> [T]hat [Lynn] did not have "on-demand" access to the funds as Cadle contends. Here, the Court finds [Lynn's] testimony credible and she testified that she had to ask [attorney] Jones for the funds. [Attorney] Jones then decided whether to provide [Lynn] with the funds or not. Therefore, the Court finds that [Lynn] did not have control of LaVan's property. [Attorney] Jones appeared to have control over the property. The Court further finds [Lynn's] testimony that she did not know that the IOLTA account [sic] contained LaVan's property to be believable. Accordingly, the Court hereby finds that [Lynn] did not "knowingly and willingly" answer the disclosure statement falsely for the non-periodic writ when [Lynn] stated she did not possess or control LaVan's property. Thus, under MCL 600.4051, [Lynn] is not liable to Cadle for the amount due on Plaintiff's judgment against LaVan.

On appeal, Cadle attacks these factual findings. We find Cadle's arguments unpersuasive.

### 1. FINANCIAL CONNECTION

Cadle first challenges the trial court's conclusion that Lynn did not answer falsely the disclosure statements. Lynn's disclosure statement in the nonperiodic garnishment checked the box indicating: "The garnishee is not indebted to the defendant for any amount and does not possess or control the defendant's property." This statement did not falsely disclaim any financial connection to the defendant. There was clearly some financial connection between Lynn and LaVan because Lynn testified that LaVan "set up" monetary transfers from attorney Jones's IOLTA to her personal account. But, these transfers do not indicate Lynn was indebted to LaVan. If that were the case, then the monetary transfers would have been made from Lynn's account to LaVan's, not the other way around. Similarly, the transfers do not show Lynn necessarily possessed or controlled the funds held in attorney Jones's IOLTA. As Lynn testified, she contacted attorney Jones when she needed disbursements from the IOLTA. Cadle views this testimony as indicating Lynn's "control" over the IOLTA funds, but this testimony could also indicate it was

attorney Jones who controlled the IOLTA funds. The latter conclusion is entirely reasonable considering it is undisputed the IOLTA belonged to attorney Jones, not Lynn. As such, there is no clear error in the trial court's finding that Lynn did not falsely claim she did not possess or control LaVan's property.

## 2. FUNDS HELD IN IOLTA

Cadle next argues that the trial court erroneously found the funds held in attorney Jones's IOLTA belonged to LaVan and others. According to Cadle, "[t]here simply was no basis for the Trial Court to conclude that the subject IOLTA contained money belonging to anyone other than [LaVan]." Contrary to this assertion, there was evidence admitted at trial showing significant deposits into attorney Jones's IOLTA, but the source of those deposits was, at best, unclear. For example, a representative from Cadle testified that LaVan deposited $600,000 in attorney Jones's IOLTA after selling a portion of his interest in Tremendous, suggesting the funds in the IOLTA belonged to LaVan. However, Lynn said that Tremendous's investors became angry when they learned "they were the only ones who put any money" into Tremendous, which suggests the money deposited into the IOLTA belonged to these investors. Further, the Cadle representative reported that over the course of several months, from April 2019 to October 2019, the IOLTA funds were dispersed to various persons associated with Tremendous. The funds were almost completely depleted, but in October 2019, "there was $50 coming from somewhere. It's from account 2696, which is another one of [attorney] Jones's accounts." The Cadle representative never clarified the source of the $50.

As noted, we review the trial court's factual findings for clear error. *Ladd*, 303 Mich App at 92. Although there was evidence showing significant deposits into attorney Jones's IOLTA, the evidence did not conclusively establish the source, i.e. owner, of the funds. As such, there is no clear error in the trial court's determination the IOLTA funds belonged to LaVan and others.

## 3. LYNN'S CREDIBILITY

Cadle contends that the trial court erred in finding Lynn's testimony credible. It argues ad nauseum that Lynn's testimony was inconsistent. "When reviewing the trial court's findings of fact, this Court defers to the trial court on issues of credibility." *Mogle v Scriver*, 241 Mich App 192, 201; 614 NW2d 696 (2000). Although Cadle points to numerous alleged irregularities in Lynn's testimony, Cadle provides no legal argument why this Court should not defer to the trial court's determination that Lynn's testimony was credible. As such, Cadle's challenge to Lynn's credibility is meritless.

## III. ADMISSION OF EVIDENCE

Cadle challenges the trial court's admission of evidence, stating the evidence offered by Lynn and admitted by the trial court contravened MCR 3.101(M)(5). We disagree.

## A. STANDARD OF REVIEW

Evidentiary rulings are reviewed for an abuse of discretion. *Szymanski v Brown*, 221 Mich App 423, 435; 562 NW2d 212 (1997). "[A]n abuse of discretion occurs only when the trial court's

decision is outside the range of reasonable and principled outcomes." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 220-221; 760 NW2d 674 (2008).

## B. LAW AND ANALYSIS

Again, "[o]n the trial of the garnishee's liability, the plaintiff may offer the record of the garnishment proceeding and other evidence. The garnishee may offer evidence not controverting the disclosure, or in the discretion of the court, may show error or mistakes in the disclosure." MCR 3.101(M)(5). According to Cadle, the trial court admitted evidence from Lynn that contravened this rule.

Cadle's argument in support of its challenge to the admission of evidence under this court rule is extremely difficult to follow. Cadle cites to several items of evidence offered by Lynn and admitted at trial. It then provides a long and tortured explanation of inconsistencies in certain evidence. These asserted conflicts provide no explanation why the admission of the cited evidence did not comport with MCR 3.101(M)(5) or why the trial court erred when it admitted the evidence. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citations omitted). This issue is abandoned because Cadle fails to offer any substantive explanation why the cited evidence was inadmissible under MCR 3.101(M)(5). Its explanation of the conflicts in testimony is irrelevant to the issue of admissibility under MCR 3.101(M)(5) and only confuses the issue.

It is also notable that Cadle cites to LaVan's earlier perjury conviction in the federal court as evidence of an abuse of discretion. A defendant's earlier conviction in a completely unrelated case is irrelevant to the question of the admissibility of evidence in a garnishment action—in particular where the issue in the garnishment action involves the garnishee, not the defendant. Again, the issue here is whether the garnishee's evidence controverted the disclosure, or showed an error or mistake in the disclosure. MCR 3.101(M)(5). LaVan's perjury conviction is simply not relevant to that question.

## IV. DEFAULT JUDGMENT

Cadle contends the trial court erred when it granted Lynn's motion to set aside the default judgment. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion the trial court's decision on a motion to set aside a default judgment. *Brooks Williamson & Assoc, Inc v Mayflower Constr Co*, 308 Mich App 18, 24; 863 NW2d 333 (2014). Again, "an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Shawl*, 280 Mich App at 220-221.

## B. LAW AND ANALYSIS

MCL 600.4012(10)(b) states, in part:

On motion of the garnishee filed within 21 days after entry of a default judgment under subsection (9), the court shall do 1 or more of the following, as applicable:

(b) If any of the following circumstances exist, set aside the default judgment:

* * *

(*ii*) The garnishment, notice of failure, request for entry of a default, or request for default judgment was not properly served or sent as required by this section.

Under MCR 2.105:

(A) Individuals. Process may be served on a resident or nonresident individual by

(1) delivering a summons and a copy of the complaint to the defendant personally; or

(2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

Lynn attached an affidavit in support of the motion to set aside the default judgment. Her affidavit stated:

I never received personal service of the subject Writs of Garnishment to me as the Garnishee or service by certified mail as required by law. However, I do believe that I received the Writs of Garnishment by First Class Mail, via the US Postal Service, on or about April 5, 2019, which is the day before the date of my husband's death.

Also attached to the motion to set aside the default judgment was documentation showing service of the nonperiodic writ of garnishment via first-class mail. Another attachment included an earlier order by the trial court regarding alternate service in the collection action against LaVan. The order regarding alternate service pertained to "LaVan Hawkins, LaVan Hawkins, Trustee of the LaVan Hawkins Trust – PHI." There was no commensurate order allowing alternate service of Lynn.

To properly serve Lynn the garnishment documents, Cadle should have either served them personally, or by registered or certified mail. MCR 2.105(A). Because Cadle failed to do this, Lynn was improperly served the writs of garnishment. Again, MCL 600.4012(10)(b) states that a court "shall" set aside a default judgment if it is shown a party was improperly served. "The term 'shall' is mandatory." *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017) (citation omitted). Thus, the trial court had no discretion and was required to set aside the default judgment.

## V. SANCTIONS

On cross-appeal in Docket No. 362697, Lynn raises three challenges to the trial court's denial of her pursuit of sanctions, which included attorney fees and costs. In Docket No. 363491, Lynn argues that the trial court erred in upholding the court clerk's denial of her bill of costs. We disagree with each of these arguments.

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision on an award of sanctions. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Shawl*, 280 Mich App at 220-221. "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't Of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). The trial court's factual findings are reviewed for clear error. *Shahid v Dep't of Health & Human Servs*, 333 Mich App 267, 272; 963 NW2d 638 (2020).

This issue also involves the interpretation of statutes and court rules. As noted above, this Court conducts a de novo review of these issues. *Ladd*, 303 Mich App at 92. "Our goal when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text. If the text is unambiguous, we apply the language as written without construction or interpretation." *Ligons*, 490 Mich at 70.

### B. SANCTIONS UNDER MCR 2.625(A)(2), MCL 600.2591

Lynn first contends the trial court abused its discretion when it denied attorney fees and costs on the basis of its conclusion that Cadle's garnishment action was not frivolous under MCR 2.625(A)(2) and MCL 600.2591. MCR 2.625(A)(2) states: "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." And, MCL 600.2591 provides, in part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

\* \* \*

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

These authorities "not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "The purpose of imposing sanctions for asserting frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (quotation marks and citation omitted).

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made, and the factual determination by the trial court depends on the particular facts and circumstances of the claim involved." *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 548; 907 NW2d 611 (2017) (quotation marks, alterations, and citation omitted). "Not every error in legal analysis constitutes a frivolous position." *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002). Simply because "a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Id*.

The trial court found no grounds under MCL 600.2591(3)(a) in which to impose sanctions, stating:

Cadle had evidence sufficient to justify taking the claim to trial. Finally, although the Court has ultimately ruled against Cadle, the evidence does not compel a finding that the primary purpose of the action was harassment or injury, that Cadle lacked a reasonable basis for believing its claim, or that is [sic] position was devoid of arguable legal merit. Accordingly, [Lynn's] request for attorney fees is DENIED.

On cross-appeal, Lynn argues the trial court abused its discretion in denying the motion for sanctions because Cadle's pursuit of the garnishment action was indeed frivolous. She cites to numerous examples in the record which she believes demonstrate the factors under MCL 600.2591(3)(a).

Again, this Court is required to look at claims at the time they were made. *DC Mex Holdings LLC*, 320 Mich App at 548. Many of Lynn's record cites are from facts learned *after* the claim was filed. Because some of these facts were learned after Cadle filed the case, they are irrelevant to the question of whether the claim was frivolous under MCL 600.2591(3).

At any rate, there is no error in the trial court's findings. For instance, there was not conclusive evidence that Cadle's primary purpose was harassment, embarrassment, or injury under MCL 600.2591(3)(a)(*i*). While there was a suggestion in the lower court that Cadle had considered pursuing a case against Lynn under the Racketeering Influenced and Corrupt Organization (RICO) Act, 18 USC 1961 *et seq.*, that does not mean Cadle's actions were solely for that purpose.

There is also no merit to Lynn's belief that Cadle lacked a reasonable basis for its garnishment actions against her. At the time these garnishment actions were initiated, LaVan was still alive, the Illinois judgment was valid, and it was unclear Lynn's involvement in LaVan's finances such that Lynn would be liable as a garnishee to LaVan. Thus, there is no clear error in the finding that Cadle did not lack a reasonable basis for pursuing the garnishment action against Lynn.

Finally, Cadle's position, although ultimately rejected by the trial court, was not necessarily devoid of legal merit. Publicly-available information suggested that LaVan had become extremely wealthy through his business dealings. Lynn, as LaVan's wife, may have had access to this wealth. There was also some evidence Lynn was involved in LaVan's business dealings—for example, she was the registered agent for Tremendous. Again, "[t]he design of a garnishment proceeding is to preserve a principal defendant's assets in the control of the garnishee . . . ." *Premiere Prop Servs, Inc*, 333 Mich App at 632. Because Lynn appeared to have some access to LaVan's assets, it stands to reason that Lynn might have some control over the assets. Accordingly, there is no clear error in the trial court's finding Cadle's pursuit of the garnishment was devoid of legal merit.

## C. ATTORNEY FEES AND COSTS UNDER MCR 2.625(E)

Lynn's other argument on cross-appeal is that the trial court erred in failing to address her request for attorney fees and costs under MCR 2.625(E). Lynn takes issue with the fact that the trial court did not explicitly address her request for attorney fees and costs under MCR 2.625(E). She apparently believes the trial court was required under this court rule to set forth its reasoning and the failure to do so constituted an abuse of discretion. Lynn misunderstands MCR 2.625.

To resolve this issue, we must consider MCR 2.625(A) and MCR 2.625(E) together. MCR 2.625(A) states:

(1) In General. Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

-13-

(2) Frivolous Claims and Defenses.  In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

And, MCR 2.625(E) states in relevant part:

Costs in garnishment proceedings to resolve the dispute between a plaintiff and a garnishee regarding the garnishee's liability are allowed as in civil actions.  Costs may be awarded to the garnishee defendant as follows:

\* \* \*

(2) The court may award the garnishee defendant, against the plaintiff, the total costs of the garnishee defendant's defense, including all necessary expenses and reasonable attorney fees, if the issue of the garnishee defendant's liability to the principal defendant is tried and

(a) the garnishee defendant is held liable in a sum no greater than that admitted in disclosure, or

(b) the plaintiff fails to recover judgment against the principal defendant. [MCR 2.625(E)(2).]

MCR 2.625(A) operates as a "permission slip" which allows a prevailing party in a civil action to tax costs, and sometimes attorney fees.  Indeed, this "court rule presumes that the prevailing party may tax its costs unless a statute, other court rule, or the presiding judge has ordered otherwise." *Patel v Patel*, 324 Mich App 631, 640; 922 NW2d 647 (2018).  But, if the court finds the opposing party's action frivolous, the court must award attorney fees and costs. MCL 600.2591(1).  By contrast, MCR 2.625(E) instructs the *amount* of attorney fees and costs compensable to the prevailing party in a garnishment action.  In other words, MCR 2.625(E) does not determine whether attorney fees and costs were permissible.  Rather, it serves as a means to calculate the amount of attorney fees and costs.

Here, the trial court found attorney fees were not compensable.  Thus, there was no need for it to explain its reasoning as the amount of attorney fees under MCR 2.625(E) because Lynn lacked the "permission slip" to seek attorney fees under MCR 2.625(A).  Similarly, the trial court did not need to explain that costs were allowable because it is presumed Lynn, as the prevailing party, may tax costs. *Patel*, 324 Mich App at 640.  Thus, the trial court was not required to explain its decision.

D.  BILL OF COSTS

In Docket No. 363491, Lynn argues the trial court misapplied the relevant court rules.  She also claims that the trial court erred in finding the bill of costs was not verified.  For the reasons discussed below, we affirm the trial court's denial of Lynn's motion to review the decision by the court clerk.

## 1. TIMELINESS

The trial court's August 4, 2022 order which denied Lynn's motion for attorney fees did not specifically address whether Lynn was entitled to costs. Lynn moved for clarification, noting that the trial court did not address whether attorney fees were compensable under MCR 2.625(E). The trial court denied the motion for clarification, stating attorney fees were not compensable. Lynn filed a bill of costs on September 8, 2022. The court clerk denied Lynn's bill of costs because "[t]he costs were not presented to the clerk within 28 days after the judgment was signed as required by MCR 2.625(F)(2)." Lynn sought review of this decision to the trial court and the trial court upheld the court clerk's decision stating in part: "The Costs were not presented to the Clerk of the Court within 28 [sic] after the judgment was signed as required by MCR 2.625(F)(4) . . . ."

Lynn now asks this Court to review the trial court's decision to uphold the court clerk's findings of timeliness under MCR 2.625(F). The trial court plainly erred as to its conclusion that "[t]he Costs were not presented to the Clerk of the Court within 28 [sic] after the judgment was signed as required by MCR 2.625(F)(4) . . . ." MCR 2.625(F)(4) concerns the date on which an affected party challenges the clerk's decision. In stating that Lynn failed to present the bill of costs within "28" after the judgment was signed it seems the trial court conflated the requirements of subsection (F)(2) with subsection (F)(4). Normally, this error would require this Court to remand this issue to the trial court for a determination as to whether Lynn complied with the requirements of MCR 2.625(F)(2) and (4). But, as discussed in the next section, Lynn's bill of costs was nevertheless deficient and the trial court did not err in rejecting it.

## 2. VERIFICATION

Lynn next challenges the trial court's finding that: "[T]he bill of costs was not verified as required by MCR 2.625(F)(2(a) [sic] and MCR 2.625(G)(2)." Lynn's bill of costs provided, in part: "The items charged in this bill are correct and were necessarily incurred in this action. The services for which fees are charged were actually performed." The bill of costs was signed by Lynn's attorney.

However, Lynn's bill of costs failed to include a verification. Lynn acknowledges this issue, stating the lack of verification is a "relatively minor procedural defect," and the trial court nevertheless erred in failing to affirm her bill of costs. She cites to this Court's decision in *Kostreva v Kostreva*, 337 Mich App 648; 976 NW2d 889 (2021), for this proposition. At issue in *Kostreva* was a plaintiff's emergency motion to travel with the parties' minor child to Poland. *Id.* at 659-660. The trial court granted the motion even though the plaintiff failed to attach a verification as required by the relevant court rule. *Id.* at 660. We affirmed the trial court's order stating that sometimes courts are presented with "a bona fide emergency compelling the court to issue an order without waiting for normal adversarial processes to play themselves out . . . ." *Id.* at 665. Thus, "sound procedure often requires discretion to exact or *excuse* compliance with strict rules . . . ." *Id.* (quotation marks and citation omitted).

Lynn now asks this Court to take the same path as *Kostreva* and conclude that the lack of a verification was relatively minor, and the requirement that the bill of costs include a verification may be overlooked in this instance. However, this case is distinguishable from *Kostreva*. *Kostreva* involved a "bona fide emergency"—something not found in this case. As noted, this Court's "goal

when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text. If the text is unambiguous, we apply the language as written without construction or interpretation." *Ligons*, 490 Mich at 70. In this instance, the plain language of the court rules requires a party to attach a verification to the bill of costs. Thus, the trial court did not err in concluding Lynn's bill of costs was not actionable for failure to include a verification.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron